## B. E. TAYLOR v. THE STATE.

### No. 2757.  Decided June 25, 1904.

**1.—Jury and Jury Law—Poll Tax.**

It was reversible error to overrule appellant's challenge for cause to three jurors, on the ground that they had not paid their State and county poll tax according to law, where he exhausted his challenges afterwards, and the said jurors sat on the jury who tried him, and where it appeared that a sufficient number of qualified jurors who had paid their poll tax could have been obtained to try the case.

**2.—Same—Question of Fact in Each Case.**

A defendant can not be deprived of the right whenever called for trial to raise the question, whether the jurors who are to sit upon his case have paid their State and county poll tax, and if the facts should show that there are in the county sufficient jurors who have paid said tax, he is entitled to such qualified jurors.

**3.—Evidence—Contemporaneous Crimes.**

Where one is being tried for forgery, contemporaneous forgeries are admissible to illustrate the purpose and intent, when necessary to develop the res gestæ, or connect the accused with the offense on trial, and to show system on the part of the defendant; and it is not necessary that such forgeries must occur at one and the same time.

**4.—Charge of the Court—Same.**

A charge which required that defendant could not be convicted of forgery, unless he was connected with each and every one of the contemporaneous forgeries which were in evidence, including the one alleged in the indictment, was one favorable to appellant, of which he could not complaint.

**5.—Evidence—Letters.**

Letters pertaining to the case, directly traceable to appellant by the evidence, and shown to have been written, indorsed, or received by him in response to those written by him, or under his authority are admissible.

**6.—Same—Abstracts of Title Not Evidence.**

An abstract of the title to the land for which the alleged forged note was given is not evidence; the original deed, or an authenticated copy, with the proper notice, as required by statute would be.

**7.—Indictment—Innuendo Clause.**

Where an indictment for forgery alleged that defendant did pass a false and forged promissory note, setting out the same in haec verba, together with the indorsement thereon, it was not necessary to point out by an innuendo clause in the indictment as to which—the note or the indorsement—the State relied on.

**8.—Same—Variance.**

Where an indictment for forgery alleged that defendant did pass a false and forged promissory note setting out the same, together with the indorsement thereon, in haec verba, the note being signed C. A., and the indorsement, A. M. E., the first being the payor and the second the payee, it is not necessary to allege by innuendo clause which name or whether the note or the indorsement was forged, and there is no variance.

Appeal from the District Court of Bexar.    Tried below before Hon. John H. Clark.

Appeal from a conviction of passing a forged instrument; penalty, five years' imprisonment in the penitentiary.

The following is the second count of the indictment upon which the case was submitted; the first count charged the appellant with the false, willful and fraudulent making of the identical instrument set out in the second count:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present in and to said court, that B. E. Taylor, on or about the 17th day of April, 1901, in the county of Bexar and State of Texas, did willfully, knowingly and fraudulently pass as true to one Miss Ella Felder, a false and forged instrument in writing, which had theretofore been made without lawful authority and with the intent to defraud, and was then to the tenor following:

" 'No. of Note.    1.    $1250.00 Gold.

" 'San Antonio, Texas, April 17, 1901.    For value received, on April 17th, 1903, without grace, I promise to pay to the order of A. M. Elwell the sum of one thousand two hundred and fifty ($1250.00) dollars (in U. S. gold coin of present standard weight and fineness), with interest at the rate of eight per cent per annum, from date hereof until paid, interest payable annually.    Both interest and principal payable at San Antonio, Texas.    This note is given in part payment of the purchase money for 600 acres of land in Bandera County, Texas, being 440 acres off the western part of survey No. 317, on the waters of the Sabinal River, patent No. 298, issued to Leander Shores, asse. of the G. C. & S. F. Ry. Co.    Also 160 acres, being the N. E. corner of survey 319, by virtue of land scrip No. 2800, issued to Leander Shores, asse. of the G. C. & S. F. Ry. Co., by Commr. of Gen'l Land Office, January 28, 1881, this day deeded to me by A. M. Elwell, and for the payment hereof, together with the interest hereon according to the tenor and reading hereof, a vendor's lien is hereby acknowledged.    And in case of legal proceedings on this note, I agree to pay an additional ten per cent on the principal and interest as attorney's fees.    If this note is not paid at maturity, or if any installment of interest on the same is not promptly

paid, then and either of said events, this note shall, at the option of the holder thereof, at once mature and become due and payable.

"'CHARLES ARNTZ.

"'Cash $1,950.00.   Note No. 1, $1,250.00.

"'Total consideration, $3,200.00.

"'Said note being endorsed on the back as follows:

"'Pay to the order of Ella A. Felder without recors.

"'A. M. ELWELL.'

"And which said instrument in writing the said B. E. Taylor, then and there well knowing to be false and forged, he, the said B. E. Taylor, did pass the same as true, with intent to injure and defraud, contrary to the statute and against the peace and dignity of the State."

The principal State's witness, Miss Ella Felder, testified substantially that the defendant had sold her the note described in the above count of the indictment and that she gave him her check for $1250 for it, which was paid.  Defendant represented himself as the agent of A. M. Elwell, and the check was made payable to that name, and was drawn on the San Antonio National Bank.  That when the interest became due witness wrote several letters to Arntz and others, which were all returned by the postoffice; that she called upon defendant to explain, who first allayed her anxiety, but finally evaded her and thus aroused her suspicions, etc., and that upon further inquiry she found that no such persons existed as Arntz and Elwell as far as she could ascertain.  That witness relied on defendant's representations, as defendant showed her a letter which purported to be from her attorney (since deceased), in which he stated that he had looked into the title of the land for which the note was given.  That defendant further assured the witness that the land was very valuable; that Charles Arntz, the purchaser, and his brother were living on it and improving it, and had made a large cash payment on the land; that he (defendant) had been on the land and knew it was good security, etc.

The State further showed by various witnesses that the defendant had disposed to different persons in San Antonio similar notes purporting to be vendor's lien notes on land near that sold the main State's witness, and all situated in Bandera County, Texas, under similar representations and within a few months of the time he disposed of the note to Miss Felder, the State's witness, and that these representations were found to be essentially not true.  That no such persons as defendant claimed to know or represent in the transaction could be found, and that the papers upon which he represented the title to the land described in the note set out in the indictment to vest were fictitious.  That the defendant's signature or writing was compared by a number of experts on handwriting with the handwriting on the note alleged to have been forged and pronounced to be the same.

The defendant's testimony undertook to show that Charles Arntz and William Arntz, A. M. Elwell and other persons whose names figured in

the different transactions had been seen by different witnesses in San Antonio and elsewhere.

*C W. Ogden, P. H. Swearingen,* and *Williams & O'Connor,* for appellant.—Failure to pay poll tax disqualifies a man for jury service. The court should have sustained the challenge for cause. The law gives the defendant ten peremptory challenges. The trial court had no right to compel defendant to use any of his ten peremptory challenges on disqualified jurors. Art. 3139, Rev. Civ. Stats., as amended by the Acts of the 28th Leg., Special Session Acts, p. 16.

An indictment must, as far as may be, identify the particular transaction, and thus become specific in a manner to give the defendant all reasonable notice of what is to be produced against him. Kerry v. State, 17 Texas Crim. App., 180; Alexandra v. State, 29 Texas, 496; Williams v. State, 1 Texas Crim. App., 91; Am. Rep., 400; Caldwell v. State, 14 Texas Crim. App., 171; Thompson v. State, 16 Texas Crim. App., 159.

When the purport clause of an indictment for forgery mentions one instrument only without specifying the nature of said instrument, or whose act it purports to be, or in any way describing or identifying said instument, and said indictment in its tenor clause sets out two distinct instruments, each of which is capable of being forged, and nothing is said in the indictment to show which of said instruments was relied on, the tenor clause is repugnant to the purport clause and the indictment is fatally defective.

The court erred in overruling defendant's motion in arrest of judgment, because the second count of the indictment herein is duplicitous and repugnant in this, that the note set out in said count is signed "Charles Arntz," and the indorsement is signed "A. M. Elwell," and there is no innuendo allegation showing which name or instrument was forged, if either.

Every statement in an instrument set out in an indictment is an allegation, and, unless explained by innuendo clauses, must be proven as alleged. Simms v. State, 22 S. W. Rep., 876.

Whether or not there existed such connection between extraneous crime and the one for which defendant is on trial as to make evidence of said extraneous crime admissible, is a judicial question, and if the court does not clearly perceive said connection, the accused should be given the benefit of the doubt and the evidence should be rejectd. Underhill Crim. Ev., p. 110; Taylor v. State, 27 Texas Crim. App., 45; Blain v. State, 30 Texas Crim. App., 702.

The court erred in that portion of its charge set out in our seventeenth assignment, because the same allows the jury, and virtually instructs them, that there is evidence going to show defendant's guilt, if they believe "defendant was connected with each of the transactions, and with the one alleged in the indictment," whether his connection with same was with guilty knowledge or not upon his part, and in that respect, it was upon the weight of the evidence.

When the charge assumes that certain evidence has established, or tends to establish, a certain fact, it is upon the weight of evidence. Walker v. State, 7 Texas Ct. Rep., 395.

Where an indictment charging defendant with knowingly passing a forged instrument as true sets out two instruments, each capable of being forged, and the proof is equally strong that each instrument so set out is forged, it is error for the court to fail to point out in its charge the instrument relied on as forgery, and apply the law to the facts in evidence establishing the forgery of said instrument so specified in said charge.   Clubb v. State, 14 Texas Crim. App., 192.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted under the second count of the indictment, for passing as true a forged instrument; his punishment being assessed at confinement in the penitentiary for a term of five years.

Appellant insists that the second count of the indictment mentions only one instrument as a forgery, and in no way identifies or describes it, while the tenor clause sets out two distinct instruments, each capable of being forged; and there is no innuendo clause pointing out the one to be relied on, and no election by the State.   The tenor clause shows an indorsement on the note, and this appellant insists is a variance from the purport clause.   We hold his insistence is without merit.   See Miller v. State, 34 S. W. Rep., 267; Strang v. State, 32 Texas Crim. Rep., 219.   Appellant further insists there is a variance between the allegation and the proof on this question.   We do not agree with this contention.

The first bill of exceptions is as follows: "* * * The jurymen selected by the jury commissioners for the week beginning December, 1903, were examined by the court on their voir dire as to their qualifications as jurors.   Whereupon four of the jurors, to wit, George Ball, John H. Stapper, Sam Davis and Beck, each stated upon oath to the court that they lived in the county of Bexar, but not in the city of San Antonio; that they had not paid their State and county poll tax for the year 1902, nor for the year 1903; that they were not exempt from payment of poll tax for any cause authorized by law, but owed same and had failed to pay.   Thereupon defendant challenged each and all of these four jurors, namely, George Ball, John H. Stapper, Sam Davis and Beck for cause, to wit, that they were not qualified under the law to sit as jurors because they had failed to pay their State and county poll tax for the year 1902, and for the year 1903, which tax they justly owed. Defendant further showed that there were three thousand or more qualified jurors in Bexar County, Texas, who had paid their poll taxes, and who were not disqualified to sit as jurors in this case.   The court overruled defendant's challenge for cause to the jurors mentioned, and permitted three of these jurors, George Ball, John H. Stapper, Sam Davis,

to sit in this cause, and to try this defendant. The court explained at the time that a sufficient number of qualified jurors who had paid their poll taxes in Bexar County, Texas, could be obtained to try this case; but that it would be impossible to run the three district courts in Bexar County with qualified jurors if the failure to pay poll taxes was recognized by the court as a disqualification. No testimony was then offered to sustain the court's statement. Defendant then and there in open court excepted to the ruling of the court in refusing to sustain defendant's challenges of said jurors for cause. Thereafter this defendant was compelled to and did exhaust all of the peremptory challenges given him by law by striking out the names of ten of the jurymen on the list of the jury, which said ten men were each and all especially obnoxious to this defendant for sufficient reasons to this defendant and his counsel. The three disqualified jurors, George Ball, John H. Stapper, and Sam Davis sat on the jury and tried and convicted this defendant. This defendant now tenders this his bill of exceptions, and asks that the same be allowed, * * * Which is accordingly done, with this qualification: the four jurors challenged for cause were on the regular panel. After the motion was overruled three of said jurors were left on the jury. Defendant's counsel did not challenge or offer to challenge any one of them, except because they had not paid their poll tax, and they did not claim that any of said jurors were objectionable for any other cause. A few days before that time, the court had made an investigation as to the number of qualified jurors who had paid their poll tax in Bexar county; and had come to the conclusion and had found that it would be impossible to run the courts of Bexar County by using only jurors who had paid their poll tax, and that he then so found and stated; that no evidence was taken nor had any written order been made. The investigation made by the court and stated at the time was by taking the statements and judgment of different citizens who had acted as jury commissioners, the judges of the two other district courts and officers of the court, together with the court's knowledge of the matter from having selected jurors for three years next before said date. The court found there was a large number of Mexicans, Germans, Italians, negroes, Polanders and other nationalities who could not read and write and that a great many others were exempt from jury services from grounds given in the statute; that there were three district courts in session for nine months in the year; that each court had drawn for each jury week forty jurors; that about eight-tenths of the courts' terms were jury weeks; that the county court was in session most of the time and used a great many jurors, besides jurors were often sick or had sick families, or were away from home and could not be found; and that while a jury could be selected in this case with little trouble, that all the courts were using jurors who had not paid their poll tax; that it would be impossible to run the courts without using jurors who had not paid their poll tax; that often the regular panel was exhausted, talesmen were brought in, including other jurors who had not paid their poll tax.

When defendant's counsel challenged them for same cause which was then as to them sustained and the jury was completed, that at no time did defendant or his counsel claim that any objectionable juror had been forced upon them nor did they make or offer to make any further challenge to any juror who served on the jury, except said challenge for cause—that is, for failure to pay poll tax."

This bill brings in review a construction of article 3139, as amended by the Acts of the Twenty-eighth Legislature, Special Session, p. 16, which provides: "No person shall be qualified to serve as a juror who does not possess the following qualifications: 1. He must be a citizen of the State and of the county in which he is to serve and qualified under the Constitution and laws to vote in said county; but whenever it shall be made to appear to the court that the requisite number of jurors who have paid their poll taxes can not be found within the county the court may dispense with the requirement of the payment of poll taxes as a qualification for service as a juror." The learned trial judge in construing this article, as shown by the bill, properly holds that the article gives the court a judicial discretion to dispense with the poll tax requisite of jurors when a sufficient number of such poll tax paying jurors can not be found to sit upon the jury for the court during the year; that is, the statute did not mean that before the court could dispense with the poll tax qualification, it must appear there were not enough jurors in the county to try this or any other one case. It is apparent that the purpose of the statute was to authorize the trial courts of this State to dispense with the payment of the poll tax as a qualification of jurors, whenever such prerequisite would incumber or hinder the district and other inferior courts of the county in the administration of justice, and a proper and expeditious trial of cases. But this is as far as said article authorizes the court to go. It did not authorize the court, as was done in this instance, to dispense with the poll tax qualification where the facts make it manifest that there were at least three thousand or more qualified poll tax paying jurors in the county, and who were not disqualified to sit on juries. This fact can be determined at the beginning of the term by the judge thereof. However, this would not deprive defendant, whenever called for trial, to raise this question in passing upon the qualification of jurors. To so hold would be depriving defendant of the right to be heard in the selection of the jury that was to try him under the laws and Constitution of this State. The statute did not contemplate that this should be done. Therefore, it follows that when each case is called, if defendant insists, he has the right to except to being required to take upon his jury men who are not poll tax payers; and if the facts should show that there are sufficient jurors qualified to sit on the jury trying appellant, he is entitled to such qualified jurors. In other words, it becomes a question of fact in each individual case. If we should hold in this case, that where there were three thousand or more poll tax paying jurors, with all the other qualifications, in a county, and yet the court could dispense with said qualification, this would completely

nullify the statute, and not carry out its very salutary and evident meaning. Accordingly we hold that the court erred in forcing upon appellant jurors without poll tax qualifications.

In the eighteenth assignment appellant insists the court erred in overruling defendant's motion to strike out from the evidence all testimony referring to a note signed by Chas. Rodgers for land in Bandera County; all evidence about the land for which the Chas. Rodgers note was given, and all evidence about the whereabouts and identity of Chas. Rodgers; all testimony about the note signed Wm. F. Arntz; all evidence about the land for which Wm. F. Arntz's note was given; all the evidence as to the whereabouts and identity of A. M. Elwell, her relations with defendant, her relations with John Woods & Sons, bankers; her bank account; all testimony referring to Jessie R. Taylor, her acknowledgment to the deed; her relations with defendant; all testimony referring to the advertisement in the "Express"—for the reason that all of these matters are foreign and extraneous transactions; they are irrelevant and immaterial to any issue in this case; and because they do not prove that defendant in any way forged or passed as true the forged instrument set out in the indictment; that none of these extraneous matters are crimes within themselves; that they do not show any part of a system of forgery, or a passing as true a forged instrument; that they are widely separated in point of time, and are no part of the res gestæ. It has always been held by this court that where one is being tried for forgery, contemporaneous forgeries are admissible to illustrate the purpose and intent, when necessary to develop the res gestæ, or connect the accused with the offense on trial, and to show system on the part of defendant. By contemporaneous we do not mean to be understood as holding the forgeries must occur at one and the same time. It may have been months before or months after the forgery on trial. If they serve to illustrate, or to show system or make apparent the intent with which this act was committed, then they are germane to this transaction, and are admissible in evidence. McGlasson v. State, 37 Texas Crim. Rep., 620; Mason v. State, 31 Texas Crim. Rep., 306; Hennessey v. State, 23 Texas Crim. App., 340; Williams v. State, 38 Texas Crim. Rep., 128.

Appellant objected to the following portion of the court's charge, to wit: "I further charge you that defendant is on trial alone for the offense charged in the indictment hereinbefore submitted to you, and could not be convicted upon any other offense or upon any other transaction than that charged in the indictment in this case. And I further charge you that you can not consider evidence of other transactions, if any, before you than the one set out in the indictment, unless you believe from the evidence beyond a reasonable doubt that defendant was guilty of the crime of forgery, or of passing forged instruments in writing in said other transactions, and unless you further so believe beyond a reasonable doubt that the instrument set out in the indictment in this case was a forged instrument, and that defendant passed the same to Miss Ella Felder as true, and unless you further so believe from the evidence be-

yond a reasonable doubt that the said offense, if any, was a part of a system of crime committed by defendant, and connected with the transaction now under investigation, and that defendant was connected with each and every one of said transactions, including the charge made by the indictment in this case." It will be observed that the court tells the jury defendant could not be convicted unless he was connected with each and every one of said transactions, including the charge made by the indictment in this case. Appellant insists that the charge is on the weight of the evidence. If so, it is favorable to appellant. The collateral forgeries are merely introducable, and the court should so say, for the purpose of illustrating the motive, system and intent, if they do so illustrate the motive, purpose and intent of appellant, in passing as true the forged instrument for which he is on trial. We would not be understood as holding that contemporaneous suspicions against appellant would be admissible, but contemporaneous acts tending to show and make out a prima facie case of forgery or passing a forged instrument.

Appellant complains that the court erred in admitting various and sundry letters. We will not copy these letters, but merely say that these letters pertaining to this case, directly traceable to appellant by the evidence, are admissible. Letters not shown to have been written, indorsed or received by defendant, in response to those written by himself or under his authority, are not admissible.

Appellant also insists that the court erred in admitting the abstract of the title to the land for which the note in question was given. This was error. The State would be entitled to introduce the original deeds, or authenticated copies thereof, with proper notice as required by the statute.

Appellant insists that the charge of the court is incorrect in other particulars than already discussed. We think the charge of the court is correct and properly presented the issues raised.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*