## TESTIMONY IN A CRIMINAL TRIAL AS TO SIMILAR OFFENSES COMMITTED.

[Circuit Court of Licking County.]

ROBERT C. LINGAFELTER v. THE STATE OF OHIO.*

Decided, June 19, 1906.

*Criminal Law—Trial for Forgery of a Receipt—Evidence as to Other Similar Offenses Competent—Change of Venue—Discretion in Trial Judge to Grant—Discretion not Abused, When.*

1. A trial judge is not without discretion in the matter of granting a change of venue in a criminal case upon the filing of affidavits that a fair trial can not be had in the county, but he must determine from the affidavits whether or not a change of venue should be granted.

2. An abuse of discretion on the part of the trial judge in overruling a motion for a change of venue is not shown, where the record discloses that but one juror was examined on his *voir dire*, and he was challenged for cause.

3. Where the crime charged is the making of a false receipt for the payment of money with intent to defraud, evidence of similar offenses or similar transactions by the same defendant is competent as tending to show the motive or intent with which the receipt in question was made, altered or forged, and its use in connection with other instruments forged by the defendant.

TAGGART, J.; DONAHUE, J., and McCARTY, J., concur.

The case of Robert C. Lingafelter against the State of Ohio is a proceeding in error prosecuted in this court to reverse the judgment of the Common Pleas Court of Licking County, wherein Robert C. Lingafelter was convicted of forgery.

While many of the questions involved in this case were brought in review in a case of this same plaintiff in error against the State of Ohio, at Mt. Vernon, yet at the urgent request of counsel we have again examined the questions involved herein.

The plaintiff in error was indicted, tried and convicted, and now prosecutes error in this court. The first question presented

---

* Leave to file petition in error in the Supreme Court refused, October 2, 1906.

in the record is the refusal of the trial court to grant a change of venue.  The contention of counsel for plaintiff in error is that upon the filing of a motion for a change of venue, supported by affidavits, the court is required to grant the change, and that there was no discretion lodged in the court.  To quote from the brief of counsel on this question; they say:

"We claim under this statute, to-wit, Revised Statutes, 7263, that the court had no discretion about it.  The statute is mandatory.  It is not necessary to satisfy the court by clear and convincing proof; all that is necessary is to make it appear to the court by affidavits, and thereupon the court is required to order a change of venue."

If this contention is correct the plaintiff in error was deprived of a substantial right, and the action of the court in this regard was erroneous.  But, this section of the statute has been recently construed by the Supreme Court, in the case of *The State, ex rel Hornbeck, Prosecuting Attorney,* v. *Durflinger,* 73 Ohio State, 154, and in that case the court, in substance, say that the language of the statute is general, and confers this right to a change of venue alike upon the accused and upon the state. If the contention of counsel for plaintiff in error obtains, all that is necessary to be done, either by the accused or by the state, is to file a motion for a change of venue, and support it by affidavits, in which event the first one filing the motion secures a change of venue.  We do not think this is the right construction to be placed upon this statute.  We think the proper construction is to give to the words of the statute their controlling effect, "unless it appears to the court by affidavits that a fair trial can not be had in the county," a change of venue can only be granted.  In this view it vests in the court the duty of determining by affidavit for or against the motion whether or not such a change of venue should be made; and this vests in the court a discretion which can only be reviewed when abused. This was the holding of this court sitting in the Third Circuit, and the case was reported (Judge Voorhees delivering the opinion) in 4 C. C.—N. S., 409; and this was the holding of this court at the April Term of this year in Muskingum county. The question then arises:  Did the court abuse its discretion?

Did the affidavits in support thereof make it appear that a fair trial could not be had in this county, so that we can say that the trial court abused its discretion?

An examination of this record shows that but one juror was examined on his *voir dire,* and he was challenged peremptorily. Then the record is silent in every respect except that it certifies that twelve jurors were obtained, and we must assume that they were good men and true; for, with this extensive record, bristling with exceptions from beginning to end, and with the counsel who took the cause of the accused in hand and carried him through this trial, we must assume that they took care that a fair jury was secured. If they did not, it is now too late, for no exceptions to the jurors that were secured are now preserved in this record. The action of the court in overruling this motion was not erroneous.

The next question presented in the record is as to the admission of evidence. The admission of similar transactions to that which the accused was charged in the indictment. The indictment, consisting of but a single count, charged the defendant with the forgery of the following receipt:

"No. 3219, Newark, Ohio, September 27, 1899. Received of the Homestead Building and Savings Company seventy-five dollars, in full, for one W. D. share No. 18, Sec. No. 1, W. D. Theo. Taylor."

Revised Statutes, Section 7091, provides that whoever falsely makes, alters or forges * * * any receipt for money * * * *with intent to defraud* is guilty of forgery. * * * It is to be observed that there is no count in this indictment for *uttering* the forged instrument. The question then arises: May similar transactions be shown, and for what purpose?

In the case of *Reed* v. *The State,* 15 Ohio, 223, on the trial of a person charged with passing counterfeit money, it was held that it was competent to prove that he had passed other counterfeit money, for the purpose of proving the *scienter,* or guilty knowledge; but in the case of Barton, 18 Ohio, 221, it was held that proof of similar offenses in the case of *grand larceny* could not be admitted in the trial of the case. The

court, in its opinion, thus stated the rule: "each case must be tried on its own merits and be determined by the circumstances connected with it, without reference to the character of the party charged, or the fact that he may have previously committed similar crimes." In this case it was claimed on behalf of the state that this evidence was introduced for the purpose of showing *the intent* with which the accused got possession of the property.

In the case of *Farrer* v. *The State*, 2 O. S., 54, the syllabus is as follows:

"On an indictment charging the prisoner with poisoning A in December, 1851, it is error to permit evidence in chief to show that she poisoned B in the month of August previous." In this case, the court, consisting of five judges, divided; Corwin (who announced the principal opinion in the case), Caldwell and Thurman, were for reversing the judgment on the ground that it was erroneous to admit evidence of other transactions or other poisonings. Judge Thurman gives the controlling reason for the majority of the court. He says, on page 74:

"No presumption whatever of guilty knowledge arises from the bare fact of passing a counterfeit coin or note, unless, which is but seldom the case, its baseness is apparent, and the person receiving it is a fit subject for imposition.

"But how is it with respect to the nature of arsenic? Is it not undeniable that the fact is almost or quite as well known to people generally that arsenic is a deadly poison, as that a dagger or a gun is a deadly weapon? I think it is. I suppose that there are very few men or women, and but few children, either, except those of tender years, who have not heard of arsenic, and that it is a poison that produces death."

And then he proceeds to say that the presumption obtains at once from the use of the means employed, that there was *guilty knowledge* and *intent*. Judge Ranney says:

"I think a new trial should have been granted, because of the misconduct of the jury, and for that reason *alone* I vote to reverse the sentence."

Bartley, C. J., on page 81, quotes, with approval, from Justice Story, in an opinion handed down by him, and claims the rule to be:

"In most cases of conspiracy and fraud, the question of *intent or purpose*, or design in the act done, whether innocent

or illegal, whether honest or fraudulent, rarely admits of direct and positive proof; but it is to be deduced from various circumstances of more or less stringency, and often occurring, not merely between the same parties, but between the party charged with the conspiracy or fraud and third persons. And in all cases, where the guilt of the party depends upon the *intent, purpose* or *design*, with which the act is done, or upon his *guilty knowledge* thereof, I understand it to be a general rule, that collateral facts may be examined into, in which he bore a part, for the purpose of establishing such guilty intent, design, purpose or knowledge. * * * In short, whenever the *intent* or *guilty knowledge* of a party is a material ingredient in the issue of the case, these collateral facts tending to establish such intent or knowledge, are proper evidence.''

In the case of *Brown* v. *The State*, 26 O. S., 176, the syllabus is as follows:

''1. Testimony otherwise competent, as tending to prove the offense charged in the indictment, is not rendered incompetent by reason of the fact that it tends to prove a separate and distinct offense.''

This was an indictment for maliciously injuring a mare. The state, in the trial, was permitted to show that a number of other horses were injured in a similar manner; the defendant objecting on the ground that this was in effect putting him on trial for different offenses at the same time.

Gilmore, J., on page 181, in respect to this objection says:

''While the general rule, unquestionably is, that a distinct crime, in no way connected with that upon which the defendant stands indicted, can not be given in evidence against him on the trial, this rule is not applicable to a case in which it is clearly shown that a connection in the mind of the defendant, must have existed between the offense charged in the indictment and others of a similar nature. When such connection exists, evidence of such other offense is admissible, not for the purpose of raising a presumption of guilt on the hypothesis that a man who commits one crime will probably commit another, but for the purpose of showing a motive or purpose prompting the commission of the offense laid in the indictment; and being competent for this purpose, it could not have been properly excluded on the ground that it tended to prove the commission of other and distinct offenses.''

In the case of *Lydia Devere* v. *The State,* 5 C. C., 509, Lydia Devere was indicted in the Common Pleas Court of Lucas County for the crime of forgery. There were two counts in the indictment. The first count charged that she unlawfully and falsely made and forged a certain promissory note for the payment of money, setting forth a copy of the note, and that she forged an endorsement on the back of the same. The second charges that she falsely and unlawfully did utter and publish as true and genuine this promissory note, being the same instrument.

In that case the common pleas court permitted the proof of similar transactions as developing and showing a scheme to defraud—a purpose in making and uttering the fraudulent instrument, as showing the guilty knowledge and criminal intent. This was excepted to, and the case went to the circuit court. Judge Bentley delivered the opinion, holding it was proper to show these as evidence of *criminal intent.*

The circuit court found that the two constituted but a single offense; that the falsely making and uttering alone constituted forgery, and was not two crimes. Under these counts of the indictment this woman was convicted and sentenced on each count. The circuit court reversed the court of common pleas, holding it was but a single offense and that she could be sentenced for but a single offense, the crime of forgery.

"It appears that she has been properly convicted of the crime of forgery, and should be sentenced to a term as for the one offense of forgery. For the reasons given, this sentence will be reversed, and the cause remanded for a proper sentence upon the verdict as for a single offense."

After the circuit court reversed the judgment, and remanded it for a new sentence, the court of common pleas sentenced the defendant for a term of nine and a half years, and that sentence was brought before the circuit court *"pro forma"* on petition in error, and that sentence was affirmed, and the case taken to the Supreme Court on motion for leave to file a petition in error, which motion was overruled by the Supreme Court.

In the case of *Lindsey* v. *The State,* 38 O. S., 507, the defendant was indicted for uttering and publishing a forged deed. On

the trial the court admitted certain other forged deeds pub-
lished by the defendant, and others found in his possession. In
affirming the judgment of the lower court, Johnson, J., on page
514, says:

"As guilty knowledge is an essential ingredient of this class
of crimes, and as the burden is on the prosecution to prove
such knowledge, the reason of the rule is apparent. Without
the aid of other acts and conduct of the accused, it would be
impossible to prove this allegation. Proof of the single act
charged will not of itself warrant the inference of guilty knowl-
edge. Hence this exception to the general rule, that other acts
of the accused calculated to raise a presumption of such knowl-
edge are admissible. Other acts which, in their nature, do not
aid the jury in determining this question, are not competent,
but when such acts or conduct tend to raise a presumption of
such knowledge, they are admissible."

These are the principal cases in Ohio. Let us now look
beyond our own state, and see whether we can ascertain the
correct rule in respect to this question.

The case of *Taylor* v. *The State*, reported in the 81 S. W.
Rep., 933, is a case from the Court of Criminal Appeals of
Texas, decided in 1904. This is the language of the syllabus:

"On a trial for forgery, evidence of other forgeries by de-
fendant is admissible on the issue of intent, or to show a
system."

Judge Brooks, delivering the opinion of the court, says:

"We would not be understood as holding that contempo-
raneous suspicion against appellant would be admissible, but
contemporaneous acts tending to show and make out a *prima
facie* case of forgery or passing a forged instrument are proper
and introducible in the case. The collateral forgeries are merely
introducible, and the court should say so, for the purpose of
illustrating the motive, system, and intent, if they do so illus-
trate the motive, purpose and intent of appellant in passing,
as true, the forged instrument for which he is on trial."

In the case of *The People* v. *McGlade*, 72 Pac. Rep., 600,
this being the 139 Cal., decided in 1903, the court says:

"In a prosecution for forgery, evidence of other forgeries
or similar instruments about the same time was admissible, to

to show guilty knowledge and intent." Also, the 34 So. Rep., page 1000.

It has been called to our attention in the briefs of counsel, that in many of these cases, there are two counts in the indictments, one for forging the instrument, for which the accused is on trial, and one for uttering the same. But it seems that in this case it was simply for forgery. They hold in this case, that evidence of other orders are proper in the case, if the proof shows that they were made about the same time.

In the 156 Mass., 196, the same question was before that court. This is in the opinion of Judge Barker:

"It is an established exception to the rule forbidding proof of collateral facts, that, in prosecution for forgery and for uttering forged paper, proof is admissible, in order to show an intent to defraud by the forgery, and also to show knowledge on the part of the accused with reference to the particular document which he is charged with uttering, that at or near the time of committing the alleged offense, he had passed, or had in his possession, other similar forged documents. The admission of such evidence is necessary, because guilty knowledge is a fact not susceptible of proof by direct evidence, and can rarely be shown by explicit admissions, but only by acts and conduct. Intent to defraud often sufficiently appears from the circumstances of the transaction, where its immediate and necessary effect is to defraud; *but there are many cases of the false making of instruments which have no such necessary effect, and in which the fraudulent intention must be proved by other and collateral circumstances.* Although the introduction of such evidence compels the defendant to meet acts not charged, and may lead the jury to convict of one crime upon proof of another, it is admitted when the occasion arises. This doctrine is a branch of a more general exception, which, when knowledge or intent must be proved, allows evidence of acts not in issue, but which tend to show such knowledge or intent, as in the trial of indictments for passing counterfeit money."

But the point that I call attention to particularly is that *the intent to defraud often does not sufficiently appear from the circumstances of the transaction, and the making of the false instrument may have no such necessary effect.* It is a forgery to make an instrument which may be capable of defrauding, although in and of itself, it may be innocent, but in

conjunction with other facts and circumstances may constitute the crime of forgery.

In the celebrated case of *People* v. *Molineux,* reported in the 168 N. Y., 298, and in the 61 N. E. Rep., 286, the Court of Appeals of New York followed the Supreme Court of Ohio in dividing upon the question as to the admission of testimony in the case of the administration of poison.

Judge Warner, in speaking for a majority of the court, thus states the rule as to the admission of evidence showing that the accused has been guilty of other similar crimes:

"The exception to the rule can not be stated with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged, when it tends to establish (1), motive; (2), intent; (3), the absence of mistake or accident; (4), a common scheme related to each other that proof of one tends to establish the others; (5), the identity of the person charged with the commission of the crime on trial."

And, on page 296, he thus lays down the rule:

"There are cases in which the intent may be inferred from the nature of the act. There are others where willful intent or guilty knowledge must be proved before a conviction can be had."

And he then says:

"Familiar illustrations of the latter rule are to be found in cases of passing counterfeit money, forgery, receiving stolen property, and obtaining money under false pretenses. An innocent man may, in a single instance, pass a counterfeit coin or bill. Therefore, intent is of the essence of the crime, and previous offenses of a similar character by the same person, may be proved to show intent." Citing a number of cases.

Judge Parker, who delivered a dissenting opinion, thus states the rule, on page 313:

"Intent is another essential element which must be made out before there can be a conviction for a crime, and, if the commission of another crime by a defendant tends to establish a guilty intent on his part in the case on a trial, the other crimes may be proved."

In the case at bar the crime charged was the false making of a receipt for the payment of money, with intent to defraud. The instrument laid in the indictment might be harmless in and of itself, as has been urged upon our attention. It could not, in and of itself, be capable of defrauding unless in conjunction with some other instruments showing a system, or showing a means or capability whereby it could be used to defraud. And, therefore, we think, under the rule of law clearly deducible from the authorities cited, that similar offenses or similar transactions showing the motive or intent with which this receipt was made, altered, or forged, were proper, and that by using it in conjunction with other instruments forged by the defendant it was capable of defrauding, and the admission of such evidence was not erroneous. It was proper.

There were a number of special requests handed to the trial court, some of which were given, and some were refused. Those that were declined by the trial court, we think, are governed by the case of *Davis* v. *The State,* in the 63 Ohio State, 173, and were properly refused by the trial court.

While this record, as I have said, bristles with exceptions from beginning to end, we find no error therein to the prejudice of the plaintiff in error, and the judgment of the court of common pleas will be affirmed with costs, and the cause remanded to the common pleas court for execution. Exceptions will be noted.

*Smythe & Smythe* and *F. V. Owen,* for plaintiff in error.

*J. R. Fitzgibbon,* Prosecuting Attorney, and *S. M. Hunter,* for defendant in error.