## E. M. Fry v. The State.

### No. 4390.   Decided January 16, 1918.

#### Motion for rehearing denied June 5, 1918.

**1.—Passing Forged Instrument—Different Counts in Indictment.**

Where the indictment in the first count charged forgery, and in the second count passing a forged instrument, and the latter alone was submitted to the jury, the count for forgery passes out and in future trials defendant will stand acquitted thereof.

**2.—Same—Evidence—Other Offenses.**

Where, upon trial of passing a forged instrument, the knowledge and intent in passing the same became an issue, evidence of collateral similar offenses was admissible, and there was no error in admitting testimony that defendant passed other forged checks similar to the one for the passing of which he was being tried, but the defendant's connection therewith must be proved by the State.   Following Ham v. State, 4 Texas Crim. App., 645.   Davidson, Presiding Judge, dissenting, holding that none of these collateral transactions were sufficiently proved in the instant case.

**3.—Same—Fictitious Person—Payee—Evidence—Rule Stated.**

Ordinarily the rule is that where the payee of the questioned instrument is represented to be or reside in the particular locality, and sufficient inquiry is made developing the fact that such person is not known in the locality named, that a finding of the jury that this payee is fictitious would be sustained, but where it appears that no sufficient proof of forgery was made as to a number of checks introduced in evidence under this rule, and the proof was not sufficient to connect the defendant therewith, they were inadmissible in evidence.

**4.—Same—Evidence—Collateral Crimes—Rule Stated.**

When conditions are such that collateral crimes are admissible in evidence against the accused, the State is not limited as to the number of such collateral crimes it may introduce in evidence, but each of them depends upon its ability to introduce legal evidence competent to establish, in a forgery case, that the collateral transaction was a forgery.   Prendergast, Judge, dissenting.

**5.—Same—Collateral Forgeries—Rule Stated.**

No inference of the corrupt intent in passing the forged instrument declared on in the indictment is to be drawn from the passing of a similar instrument which is not shown to be a forgery, and while the use of circumstantial evidence to establish a fact that an instrument, provable as a collateral transaction, was a forgery is admissible, yet it must amount to proof of the forgery of said collateral instrument, and evidence of circumstances upon which a suspicion may be founded is not sufficient.   Following Taylor v. State, 47 Texas Crim. Rep., 109, and other cases.

**6.—Same—Evidence—Other Offenses—Case Stated.**

Where, upon trial of passing a forged instrument, etc., the question of the intent and knowledge in passing the same became a material issue in the case,

and the State introduced a large number of checks similar to the one upon which the prosecution is based, and showed by circumstantial or direct testimony prima facially that said collateral instruments were forged as to their endorsement and knowingly passed by defendant, there was no error as to admitting them into evidence, but where it was also shown on appeal that a number of such instruments of this class were introduced in evidence and there was an absence of sufficient evidence that they were in fact forgeries, the same was reversible error. Prendergast, Judge, dissenting.

### 7.—Same—Evidence—Other Offenses—Res Gestae.

Where, upon trial of passing a forged instrument, it was shown that defendant, after he was indicted, attempted to gain access to various documents which bore upon the transaction and which were in the vaults of the courthouse, and in his attempt to do so in the night-time the homicide resulted therefrom, all the incidents of the transactions were res gestae and were admissible in evidence. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Clay. Tried below before the Hon. William N. Bonner.

Appeal from a conviction of passing a forged instrument; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Wantland & Parrish, W. T. Allen, Edgar Scurry, Taylor, Ireland & Taylor,* and *B. Y. Cummings,* for appellant.—On question of other offenses: Hinson v. State, 51 Texas Crim. Rep., 102; Joiner v. State, 46 id., 408; Owens v. State, 46 id., 14; Brown v. State, 54 id., 121; Leach v. State, 189 S. W. Rep., 733; Williamson v. State, 13 Texas Crim. App., 514.

*E. B. Hendricks,* Assistant Attorney General, *Leslie Humphrey,* District Attorney, *P. A. Martin,* and *Jno. C. Kay,* for the State.—On question of other crimes: Parker v. State, 43 Texas Crim. Rep., 526.

On question of admissibility of other checks: Street v. State, 7 Texas Crim. App., 5; House v. State, 16 id., 25; Kunde v. State, 22 id., 65; Blackwell v. State, 29 id., 194; Nixon v. State, 31 Texas Crim. Rep., 205; Ware v. State, 36 id., 597; Reese v. State, 44 id., 34; Wyatt v. State, 55 id., 73; Taylor v. State, 47 id., 108.

DAVIDSON, PRESIDING JUDGE.—The indictment in the first count charged forgery, and in the second passing a forged instrument. The count charging the passing was alone submitted to the jury. So the forgery count passed out, and upon which in future trials he will stand acquitted.

There are a great many bills of exception reserved to the introduction of testimony, and several exceptions properly pointed out errors in the court's charge. The State seems to rely upon the case of Fry v. State, 78 Texas Crim. Rep., 435. There is a marked distinction between that and the present case. That opinion recites in quotation an agreement as follows: "It is agreed by counsel and it is admitted by the defendant that the entire bunch of warrants purporting to be issued by the county

clerk of Young County and his deputies and the entire bunch of checks purporting to be issued by I. B. Padgett, county treasurer of Young County, and drawn on the Graham National Bank, are each and all the genuine warrants, so issued by the clerk, and that the checks are the genuine checks of I. B. Padgett, drawn by him or by his authority, and that the endorsements appearing on the back of said checks, as E. W. Fry, are the genuine endorsements and signatures of the defendant, E. W. Fry." This record does not contain such admission, and the issue of the genuineness of the endorsement of the checks is one of the most serious questions arising on this record. The checks admitted were considerably over one hundred in number. A serious question arising was that appellant did not sign his name or that of the payee upon the back of the checks. These issues were sharply contested. The State contended that the signature of appellant was genuine, and that the payee's name was forged. These questions were to be solved largely, if not exclusively, by the knowledge of the witnesses as to the handwriting of appellant. These transactions cover two or three years of time. The checks were introduced by the State upon the theory that it was necessary to prove intent of the appellant by means of systematically passing forged instruments. System is only used where it connects with the main fact, and this to show intent or knowledge or identity. Independent of these system is not admissible as we understand the law. It is not permissible to prove independent transactions unless by doing so they show the intent of the accused, or connect him with the main fact, that is, the case on trial. The mere fact that system was pursued is not admissible independent of the other matters. The writer has not believed, nor does he yet believe, that these checks were admissible from any viewpoint of this record, or of the record in the case of Fry v. State, 78 Texas Crim. Rep., 435. He took occasion in that case to note the fact that he did not believe the extraneous offenses, or the details thereof, should have been admitted, but the majority of the court did not take that view of the case or the law. But here we have an entirely different case from the former one, and in all of the cases there was an issue sharply drawn and hotly contested that appellant's name was not genuine; that his name as written on these checks was not in his handwriting. The case is one of purely circumstantial evidence, and the court so charged the jury. In this case we are of opinion these checks should not have been admitted under the circumstances stated. In all of the checks, amounting to a great number, the issue was fought with reference to each check introduced as to the genuineness of appellant's name. From the fact that his name was on these instruments, the deduction was supposed to be drawn that if he signed his name upon these checks that he forged the name of the payee in the checks or knew if he did not sign the name that the endorsed name was a forgery. This necessarily involves evidence as to the genuineness vel non of appellant's name and of these various checks. So it will be seen from this statement that each check involved a separate trial as to that particular transaction, and we have

the main trial turned aside from passing the instrument made payable to and endorsed by Lowe, which was the check upon which the indictment was based to all the other checks introduced. There is no question, it seems, of the fact that the check was genuine as drawn by Padgett, the alleged county treasurer. The fraud consisted in the endorsement of Lowe's name upon the back of it, and passing the checks in that condition. Lowe testified that he did not sign his name, and that the county did not owe him the amount for which the check was drawn. The same may be said of the other checks, practically all of them. It is a rule that only the case upon which the indictment declares a violation is to be tried. Extraneous or collateral offenses may be admissible to show intent, knowledge or identity, and sometimes this may be inferred from system. But wherever the State turns aside and introduces collateral offenses and it becomes necessary to prove the case they are admitted with a view of ascertaining whether they are genuine. If not they should not be introduced. This constitutes as many trials on the independent offenses as there are number of alleged independent offenses or collateral crimes. This diverts the minds of the jury and of the court from the case on trial. It involves trials separately upon each collateral offense to ascertain whether or not he is connected with that offense criminally. This was recognized by the court, and the jury instructed with reference to it. The court's charge in this connection is as follows:

"The State has introduced in evidence a number of checks with their endorsements, other than the check mentioned in the indictment, and upon which the defendant is being tried in this case, and with reference to these checks you are instructed: (1) That the said checks were only admitted in evidence for the purpose of showing the intent of the defendant and his system of conduct with reference to such checks (if in fact they show such intent and system of conduct) and they can not be considered by you for any other purpose. (2) You are further instructed that you can not consider for any purpose any such checks other than the J. T. Lowe check, except such (if any) as you may find and believe from the evidence beyond a reasonable doubt, were altered or knowingly passed as true by the defendant without lawful authority and with intent to injure and defraud."

So it will be seen from the court's charge as well as from what has been said with reference to the fact, that appellant was tried upon each collateral offense and the jury was so informed, and that they must find from the evidence beyond a reasonable doubt that these checks were altered or knowingly passed as true by defendant without lawful authority. Then in order to arrive at a conclusion on the part of the jury as a predicate for the consideration of the illegality of these checks, they must first determine that they were fraudulent or altered. So it will be seen before the jury could consider these collateral offenses as evidence they must first determine, after hearing all the facts, pro and con, that they were illegal and fraudulent before passing upon the intent of

the appellant. If there were one hundred and fifty to two hundred of these checks introduced, the jury would necessarily, under the facts, under the issues and under the charge of the court, have to determine first whether these checks were fraudulent,' and if so, then they might consider them with reference to the main case, but unless they did so determine they could not be so considered. That is the effect of the charge of the court. There is no question that appellant was tried on many of them on their merits prerequisite to their consideration as evidence. Under such circumstances these checks were not admissible. The charge above quoted as well as the fifth subdivision of the charge seems to be erroneous. Exception was reserved to the fifth subdivision because it was illegal in various ways, and especially that the jury must determine whether or not defendant believed these checks were genuine or false, and if *they should believe that* the endorsements were made without legal authority and with intent to defraud, then they should consider them, otherwise they should not. The theory of the defendant was that as the State was relying upon the fact that he passed the instrument, it being a case of circumstantial evidence, that the jury must find that he and not the jury believed the check was not genuine. If he believed the check was genuine he was entitled to an acquittal, because there would be no fraudulent intent. The jury must look at this case as all the other cases from the viewpoint of defendant and not from their viewpoint. If defendant believed the check was not fraudulent, or that the endorsement was made with lawful authority, then he would not be guilty, although he may have passed it. But the court instructed the jury that it was their province to believe the endorsement was made without lawful authority and with intent to defraud. Of course they must so believe, but as prerequisite in a case of this sort they must also ascertain the fact that defendant so believed. This matter was a part of the case and the jury should have been instructed to look at it from defendant's standpoint as to whether he believed the endorsement was illegal. The exception to this charge is as follows: "Because the same instructs the jury that if the name J. T. Lowe was written on the back of the instrument set out in the second count of the indictment by defendant Fry, or any other person, that the same would be forgery, and said paragraph assumes that the defendant knew that said endorsement to be a forgery." The belief of the defendant was a matter for the jury to determine and not the court. We are of opinion this exception was well taken.

There is a bill of exceptions reserved to the action of the court permitting the State to go into the homicide transaction involving the difficulty and all of its details as well as the preparation for the entering of the courthouse at night and taking checks from the vault, which finally resulted in the homicide. This matter was gone into in detail in many ways which we deem unnecessary to detail. The majority is of opinion this testimony was admissible. The writer is of opinion that

if this attack was made upon the officer at the courthouse with a view of securing this and other illegal checks as a means of destroying testimony, then it was admissible, but is of the opinion that the details of the whole trouble are not admissible. It was not necessary to go into all details of the shooting affair, but if wrong about that, then there is another question, that is, as far as the State did go into these matters as criminating evidence, the defendant had the right to have witnesses present to meet and to introduce all defensive evidence to meet the State's evidence. The opposing side always has a right to explain any matter introduced by the other side which tends to incriminate or to be used adversely to him. This has been the subject of so many decisions and not only so but by express enactment of the Legislature we deem it unnecessary to discuss that matter. It seems from the bill of exceptions that there had been a trial of the homicide case against appellant and he had been acquitted. If the State upon another trial should introduce the trouble occurring at the courthouse which resulted in the homicide, then as far as the State goes in introducing incriminating circumstances and facts against him defendant would have the right to rebut this by any testimony legitimately meeting and contesting such criminating facts. This case, it occurs to the writer, is an exemplification of the rule that extraneous matters should be gone into cautiously. This record seems to make it certain that a great number of extraneous matters were placed before the jury, the number of which the writer has not taken trouble to enumerate, and all the facts and circumstances connected with each one of those collateral offenses introduced. These extraneous matters were proved before the jury by the State, and denied by appellant. So we have the jury trying as many different offenses in this case as there were collateral offenses introduced. Before the State could use these matters against the accused upon his trial, it was necessary for the jury to determine the guilt of the defendant or apparent guilt in each collateral offense. If there were one hundred and fifty to two hundred of those extraneous crimes, then the jury had to determine in each that appellant was criminally connected with it to authorize its consideration under the theory of system to show his intent or knowledge. In the case of Fry v. State, 78 Texas Crim. Rep., 435, it is recited there were five or six hundred of these extraneous crimes or offenses introduced. The statement of this matter ought to show the error in the use of such testimony.

For the reasons indicated the judgment is reversed and the cause remanded.

                             *Reversed and remanded.*

PRENDERGAST, JUDGE.—All the checks and endorsements thereon held herein inadmissible, in my opinion, were clearly admissible, and correctly so held in the other case appealed by him, 78 Texas Crim. Rep., 435, and that case is not distinguishable from this in principle.

All the testimony as to the killings which was admitted was clearly admissible.

This case should be affirmed. I dissent.

MORROW, Judge (concurring).—The appellant was charged with forgery and passing a forged instrument. The count charging forgery was not submitted. The instrument involved was a check drawn by I. B. Padgett, county treasurer, on the Graham National Bank for the sum of $84.50, payable to J. T. Lowe. It bore the endorsement of J. T. Lowe and E. W. Fry, and was passed by E. W. Fry, and the State's theory that J. T. Lowe's name was forged, and that the appellant passed the instrument knowing of the forgery, is sustained by the verdict of the jury. It appears that the county, by authority of the Commissioners Court, was engaged in certain improvements requiring the employment of labor and teams, and that there was a custom sanctioned by the Commissioners Court under which persons to whom the county was indebted collected their money by presenting an account therefor to the appellant, who was county judge; that upon his approval the county clerk issued a warrant for the amount on the delivery of which to the county treasurer a check was issued payable to the holder of the claim, and that the check in question was the result of a transaction following this custom. The fact that the check came into the possession of and was passed by appellant was established. J. T. Lowe testified, in substance, that he was not entitled to either the warrant or the check, and that he did not receive, endorse or authorize the endorsement of the check. There was testimony pro and con touching the contention that the name of J. T. Lowe was written on the check by the appellant. The cross-examination was conducted with a view of suggesting that although the J. T. Lowe who testified had not endorsed the check, that it was issued to and endorsed by another of the same name, and innocently passed by appellant. To discharge the burden that was upon it to show that the check was forged, and that appellant with knowledge of the forgery passed it, and to meet the suggestion mentioned the State introduced evidence of other similar transactions, which theory was that appellant conceived the purpose to fraudulently withdraw from the treasury of the county some of the money and devised to that end a system of making fictitious accounts, entering his approval thereon, ordering the county clerk to issue warrants therefor, and obtaining against the same the treasurer's check upon the funds of the county, made payable to the fictitious creditor of the county, which check he would pass after writing the name of the payee and his own name on the back thereof. In support of this theory the State introduced a large number of accounts, warrants and checks with which it showed or undertook to show appellant's connection. These transactions covered a period of about three years, part of them prior and part of them subsequent to that upon which the prosecution is founded. Their admissibility was challenged by the appellant. The general rule is, of course, that an accused is to be tried

upon the merits of the charge against him, and the proof of other crimes is not received. Gilbreath v. State, 41 Texas, 567, and other cases cited in Branch's Ann. P. C., p. 99.

The question is, does the proof made here come within one of the exceptions to this rule? That there are exceptions to the rule is as well established as the rule itself. Branch's Ann. P. C., p. 98, sec. 166, and cases cited. That cases of passing forged instruments, where there is an issue of guilty knowledge or intent, come within one of the exceptions has often been affirmed by this court. Ham v. State, 4 Texas Crim. App., 645; Francis v. State, 7 Texas Crim. App., 501; Heard v. State, 9 Texas Crim. App., 1, and other cases cited in Branch's Ann. P. C., p. 864, sec. 1412. Mr. Wharton in his work on Criminal Evidence, vol. 1, p. 135, sec. 35, states what we understand to be the correct rule, as follows:

"Evidence of collateral offenses often becomes relevant where it is necessary to prove scienter, or guilty knowledge, even though the reception of such evidence might establish a different and independent offense.

"In prosecutions for receiving stolen goods, guilty knowledge is the gist or substance of the offense to be established by the prosecution; and evidence of collateral offenses is admissible to establish such knowledge.

"It is equally important in forgery and counterfeiting to establish scienter. The accused is charged with holding or circulating forged paper. He may hold one without being justly chargeable with knowledge of its character; when three or four are traced to him, suspicion thickens; if fifteen or twenty are shown to have been in his possession at different times, then the improbability of innocence on his part decreases in proportion to the improbability that such papers could have been in his possession without his knowledge of the true character of the paper. If the accused is charged with knowingly making or holding or passing the forged paper, the possession being shown, but knowledge of its character being disputed, the fact to be proved is that the knowledge was guilty knowledge; and it is admissible to show that shortly before or after the fact charged he had made or had held or had uttered similar forged instruments to an extent that renders it improbable that he should have been ignorant of the forgery."

This accords with the rule stated by Mr. Wigmore in his work on Evidence, volume 1, section 309. See also Ruling Case Law, vol. 8, p. 204. There being an issue of guilty knowledge in the passing of the instrument in question, we think that evidence that appellant passed other forged checks similar in character was admissible. To make them admissible, however, they must be forgeries, and the accused's connection with them must be proved. Ham v. State, 4 Texas Crim. App., 645.

To identify the instrument with which appellant was connected, the State relied mainly upon the testimony of I. B. Padgett, who was county treasurer at the time of the transactions.

It is plain from the statement of facts that in the operations of the

Commissioners Court, under the custom above referred to, that a great many valid transactions occurred. In other words, through the method mentioned a great many accounts were presented and proved by appellant, warrants drawn and checks collected satisfying valid claims against the county and going into the hands of the lawful holders. There is evidence of the banker who paid these checks that his only means of knowing that the particular checks submitted to him as a witness were paid to appellant was the fact that his name was endorsed thereon, and he admitted that he sometimes required endorsement for the purpose of identification, and that the fact that appellant's name was on the check was not conclusive to him that the check may not have been paid to the payee and the endorsement made for the purpose of identification. Padgett identified, as we gather from the record, 193 checks. The relevancy of these checks against appellant depended upon proof that the endorsement thereon was forged. To meet the legal requirement that proof of the forgery be made by it, the State relied upon various circumstances. As to some of the checks, we gather from the evidence that there was testimony that the supposed spurious endorsement was written in appellant's handwriting. As to others, the State produced witnesses who were residents of the county and whose names were identical with the payee in the checks, which witnesses declared that they had no connection with the check or its endorsement. As to some of the checks introduced in evidence and identified by Padgett, there was evidence that there lived in the county persons whose names corresponded with that of the payee. As to the major portion of them, however, the evidence showed that the payee was unknown and from this circumstance the State presented the theory that the warrants were obtained by appellant in the name of fictitious persons and that he wrote or caused to be written upon the checks the fictitious name, writing his own thereunder and passing the check.

The witness Padgett, in his testimony, referred to several batches of checks which he said he examined and which bore the genuine endorsement of appellant. He gave testimony with reference to each of these checks, aggregating, as we estimate them, 193. He testified that most of the payees of the checks were unknown to him, though some of them were known, and from his testimony it is difficult for us to determine just how many of the payees he claimed to have known. The banker referred to, testified to a wide acquaintance in the county and in connection with his testimony there was introduced a detailed list of those who were unknown. In this list there were 144 names.

There was evidence that the persons who worked for the Commissioners Court were both local and transient people. There was also evidence that other members of the Commissioners Court approved some of the accounts in the name of appellant. Ordinarily we understand the rule to be that where the payee of a questioned instrument is represented to be or reside in the particular locality, and sufficient inquiry is made developing the fact that such person is not known in the locality named

that a finding of the jury that this payee is a fictitious person would be sustained.  Greenleaf on Evidence, sec. 109; Cyc., vol. 19, pp. 1414 and 1421.  In this case a number of persons to whom the county might have been indebted were transient and some of the transactions introduced were quite remote, but assuming that the proof met the legal measure that would establish the fact that the persons who were not known were fictitious and that the appellant forged the endorsement on these, and that he also forged the endorsement on the six or seven with reference to which testimony was given as above stated, there remains some forty of the checks identified by Padgett, with reference to which there appears to be no sufficient proof of forgery.  They seem to be drawn by Padgett in favor of payees who were not unknown and he gave no testimony to negative their genuineness nor to refute the validity of the endorsement.  It may be that this is not a correct analysis of the evidence and the counsel conducting the trial are able to point out evidence fulfilling the legal requirement that all of the collateral transactions used against appellant were forgeries.  They have not in their brief nor in their motion for rehearing pointed it out, and we, after repeated readings of the statement of facts, have failed to discover it.

Giving full assent to the proposition of State's counsel that when conditions are such that collateral crimes are admissible against an accused, the State is not limited as to the number it may introduce, it can not be denied that its right to introduce each of them depends upon its ability to introduce legal evidence competent to establish in a forgery case that the collateral transaction was a forgery.

No inference of a corrupt intent in passing the forged instrument declared on in the indictment is to be drawn from the passing of a similar instrument which is not shown to be a forgery.  We know of no rule which would inhibit use of circumstantial evidence to establish the fact that an instrument provable as a collateral transaction was a forgery, but as said by the Supreme Court of Vermont in State v. Williams, 27 Vt., 725, "To be entitled to any force, as it is only circumstantial and collateral to the main issue, its truth should be established beyond all question of cavil."  And as said by Mr. Greenleaf: "When such other instruments said to be forged are offered in proof of guilty knowledge there must be strict proof that they are forgeries."  Greenleaf on Evidence, vol. 3, sec. 111.  The principle that the proof upon which collateral crimes will become admissible must amount to proof, and that evidence of circumstances upon which a suspicion may be founded is not sufficient has often been approved.  State v. Saunders, 27 N. E. Rep., 455; People v. Altmore, 147 N. Y., 473, 42 N. E. Rep., 180.  This principle is recognized in Taylor's case, 47 Texas Crim. Rep., 108, wherein the court says:  "We would not be understood as holding that contemporaneous suspicion against appellant would be admissible but contemporaneous acts tending to show and make out a prima facie case of

forgery or passing a forged instrument." The principle has been definitely affirmed in Ham's case, 4 Texas Crim. App., 645.

Our conclusion is that in those instances in which evidence, circumstantial or direct, show prima facie that the collateral instrument was a forgery and was passed by appellant, that it should be received, and that the record as presented and as we read and understand it shows that a number of instruments of this class were introduced in evidence and the jury authorized to consider them against appellant where there was an absence of sufficient evidence to prove that they were in fact forgeries, and that in consequence of the admission of these a reversal of the case should be ordered.

There was evidence that after appellant was indicted for forgery he sought, without success through his attorney, to have access to the various documents which bore upon these transactions that were in one of the vaults in the courthouse, and that he subsequently undertook to go into the courthouse at night-time and secure access to these documents. In his efforts to do so shots were exchanged between appellant and some of the parties with him, who were disguised, and persons guarding the courthouse, these shots resulting in the death of one of appellant's party and one of the guards. The efforts to accomplish this purpose were admissible. Parker y. State, 43 Texas Crim. Rep., 526. The incidents of the transaction which were proved were res gestae of the transaction, and were admissible as giving color to the acts and enabling the jury to weigh them in solving the controversy between the State and the defendant as to whether his purpose was simply to inspect the documents, or to obtain and suppress the evidence of the offense. Wharton, Crim. Ev., sec. 748.

I concur in the order overruling the motion for rehearing.

*Overruled.*

DAVIDSON, Presiding Judge.—I agree to the overruling of State's motion for rehearing, but adhere to the original opinion as my opinion of the case.

PRENDERGAST, Judge.—I concur with Judge Morrow in holding the forged checks were admissible. I think the proof was sufficient to admit all of them. But even if it could be held the proof might be lacking as to some of them, their admission was an immaterial error. I also concur with Judge Morrow in holding the facts of the killings objected to were admissible. Upon the whole the case should be affirmed, not reversed.