E. W. FRY v. THE STATE.

No. 3878.    Decided January 5, 1916

**1.—Forgery—Indictment—Endorsement—Pleading.**

Where defendant was charged in the indictment with forging an endorsement of the payee on the alleged check, it was not necessary to allege that the check possessed legal efficacy and obligation, and authority of the person signing it, the check on its face purporting to be a valid instrument. Following Dreeben v. State, 71 Texas Crim. Rep., 341, and other cases.

**2.—Same—Evidence—Other Transactions.**

Where, upon trial of forgery, the State was permitted to introduce in evidence certain other checks than the one which was alleged to be forged, there was no reversible error, it being a question in the case whether the endorsement on the alleged check was forged and was in defendant's handwriting, and to show system; the court properly limiting the testimony. Following Dugat v. State, 72 Texas Crim. Rep., 39, and other cases.

**3.—Same—Absence of Defendant—Practice in District Court.**

Where, upon trial of forgery, the jury after considering the case for some time came into court and requested to be discharged as they could not agree on a verdict, whereupon the court, in the absence of the defendant, instructed them to retire and further consider of their verdict, but it appearing from the record that the defendant was out on bond and that the remarks of the judge were not of that character which could have been injurious to the defendant, but were entirely proper, there was no reversible error.

**4.—Same—Charge of Court—Passing Forged Instrument.**

Where, upon trial of forgery and passing a forged instrument, the evidence authorized the court to charge the jury on the question of passing a forged instrument, and the verdict was applied to the count charging forgery, there was no error in refusing a requested charge instructing the jury not to consider the count which charged the defendant with passing a forged instrument.

**5.—Same—Evidence—Motive.**

Upon trial of forgery, there was no error in admitting evidence that defendant had attempted to suppress testimony by getting possession of the checks on which the indictment was based.

**6.—Same—Misconduct of Jury—Defendant's Failure to Testify.**

Where, upon trial of forgery, defendant in his motion for new trial showed that the jury discussed defendant's failure to testify while considering the case, the same was reversible error.

Appeal from the District Court of Wichita. Tried below before the Hon. E. W. Nicholson.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Edgar Scurry, Arnold & Taylor, Fred Arnold,* and *Ramsey, Black & Ramsey,* for appellant.—On question of insufficiency of the indictment: Munoz v. State, 40 Texas Crim. Rep., 457; Johnson v. State, 40 id., 605; Cagle v. State, 39 id., 109; Lynch v. State, 41 id., 510; Millsaps v. State, 43 S. W. Rep., 1015; Daud v. State, 34 Texas Crim. Rep., 460; Lamb-Campbell v. State, 72 Texas Crim. Rep., 628, 162 S. W. Rep., 879.

On question of other transactions: Bink v. State, 89 S. W. Rep., 1075; Davenport v. State, 89 S. W. Rep., 1077; Harris v. State, 55 Texas Crim. Rep., 469, 117 S. W. Rep., 839.

On question of court's communication with jury: Shipp v. State, 11 Texas Crim. App., 46; Mapes v. State, 13 id., 85; Cowart v. State, 65 Texas Crim. Rep., 482, 145 S. W. Rep., 341; Wilkerson v. State, 49 Texas Crim. Rep., 170; Washington v. State, 56 id., 195.

On question of jury's allusion to defendant's failure to testify: Walling v. State, 59 Texas Crim. Rep., 279; Portwood v. State, 71 id., 447.

*C. C. McDonald,* Assistant Attorney General, *Leslie Humphrey,* District Attorney, *P. A. Martin* and *John C. Kay,* for the State.—On question of sufficiency of indictment: Carter v. State, 55 Texas Crim. Rep., 43, 114 S. W. Rep., 839; Cheesebourge v. State, 70 Texas Crim. Rep., 612, 157 S. W. Rep., 761; Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1128; Pelton v. State, 60 Texas Crim. Rep., 412, 132 S. W. Rep., 480.

On question of other transactions: McGlasson v. State, 40 S. W. Rep., 503; Taylor v. State, 81 S. W. Rep., 933.

On question of remarks of court to jury in the absence of defendant: Rippetoe v. State, 67 Texas Crim. Rep., 192, 148 S. W. Rep., 811; Washington v. State, 56 Texas Crim. Rep., 195, 119 S. W. Rep., 689.

On question of suppressing testimony: McFarland v. State, 75 S. W. Rep., 788; Cooper v. State, 72 Texas Crim. Rep., 266, 162 S. W. Rep., 364.

HARPER, JUDGE.—Appellant was tried under an indictment charging him with forgery and passing a forged instrument. The conviction was applied to the count charging forgery. The instrument alleged to be forged by alteration is as follows:

"I. B. Padgett,
County Treasurer of Young County,

No. 3515                                        Graham, Texas, 10-21-1913.

Pay to J. M. Watson or order $154.00, One Hundred and fifty-four & no/100 Dollars.

To the Graham National Bank, County Depository.

(Signed)       I. B. Padgett,
                    County Treasurer."

That appellant altered said instrument by endorsing thereon the name of the payee, J. M. Watson, thus making the check payable to bearer.

Appellant moves in this court to quash the indictment on the ground that the indictment does not show that the instrument, prior to the alteration, was an instrument possessing legal efficacy and obligation, in that there is no allegation of the facts showing the authority, if any, of I. B. Padgett to act as county treasurer, and as such, to issue this check against the funds of the county, the contention being that there should have been a specific allegation that I. B. Padgett was the duly qualified and acting county treasurer of the county, and that in the issuance of said check he acted in the performance of his duties under the law—that all the facts which would render the county legally liable for the amount of the check should have been affirmatively alleged. Appellant was not charged with forging the name of Padgett but forging the name of J. M. Watson by endorsing his name on the check. If the check on its face purported to be a check issued by Padgett, county treasurer, on the Graham National Bank, as it did, if there were extrinsic matters not appearing on the face of the check, that would render it invalid, this would render it none the less forgery for appellant to endorse the name of J. M. Watson on the check. If Watson had in fact received the check and endorsed it over to a third person, he would certainly be liable to such person, for the check on its face purported to be a valid check for the amount named. We do not care to take up and review the authorities again, as we did so quite exhaustively in the case of Dreeben v. State, 71 Texas Crim. Rep., 341. In the case of King v. State, 42 Texas Crim. Rep., 108, the authorities are also reviewed, and under the authority of those two cases the instrument in this case, on its face, being a valid instrument, would make appellant guilty of forgery if he endorsed the name of J. M. Watson thereon. It is not customary for a check to bear on its face that it is issued by virtue of article so and so of the Revised Statutes, and the person who signed it is the duly elected, acting and qualified treasurer of a given county, and no person would look for such averments in the face of a check.

Appellant contends that it was error to admit certain other checks in evidence, which it was contended appellant had also forged, in a similar manner in which it was alleged he committed this forgery; that evidence of other crimes committed by him, if he did do so, should not

have been admitted. Usually this is the rule, but the exception to the rule is as well recognized as the rule itself. In the statement of facts it is alleged that some five or six hundred of these other checks were admitted in evidence, while in the bills of exceptions complaining of the matter it is recited that there were about one hundred and fifty of these other similar checks admitted. The number is immaterial. If one was admissible, then all were admissible, under the agreement we find in the record. It reads:

"It is agreed by counsel and it is admitted by the defendant that the entire bunch of warrants purporting to be issued by the county clerk of Young County and his deputies and the entire bunch of checks purporting to be issued by I. B. Padgett, County Treasurer of Young County, and drawn on the Graham National Bank, are each and all the genuine warrants, so issued by the clerk, and that the checks are the genuine checks of I. B. Padgett, drawn by him or by his authority, and that the endorsements appearing on the back of said checks, as E. W. Fry are the genuine endorsements and signatures of the defendant, E. W. Fry."

. Thus it is seen that after this admission was made, about the only issue left for the jury to decide was, was the endorsement of J. M. Watson forged, and if so, did appellant forge that name? Appellant introduced evidence tending to show that if the name was forged, he did not forge it. At his instance J. P. McKinley testified: "I have seen some of Judge Fry's (appellant's) handwriting. From having seen his signature and having seen his handwriting, I think I would know his handwriting if I were to see it. I could not swear that 'J. M. Watson' up there is in Judge Fry's handwriting. From my observation and experience with Judge Fry's handwriting, I do not see any similarity. I do not see anything that would impress me that he wrote that name." He had other witnesses testify, in substance, the same thing. On the other hand, J. S. Oglesby testified for the State he was an expert accountant; that he had made a study of handwriting for nineteen years. He goes into detail as to the way he identifies signatures, and says that in his opinion appellant wrote the endorsement, "J. M. Watson," on the check. He also testified he had examined all the checks introduced in evidence, and that in his opinion "E. W. Frye wrote the endorsements upon each of the checks" introduced in evidence. Other witnesses gave testimony that would authorize the jury to believe that appellant wrote the endorsements. Thus it is seen the issue was squarely drawn as to whether or not appellant forged the name of J. M. Watson on the check, and all evidence which would legitimately tend to show that he did do so would be admissible. The evidence for the State would tend to show appellant was county judge of Young County; that an account was made out for road work for the amount of this check in the name of J. M. Watson, and it was marked "O K" by Judge Fry as presiding judge of the Commissioners Court; that it was then presented to the county clerk, who issued a warrant on the treasurer for that amount, and the treasurer gave the check payable to the order of J. M. Watson upon which this charge of

forgery was presented. This warrant issued by the county clerk, and the check issued by the treasurer, is traced into the hands of appellant, and in addition to the endorsement of "J. M. Watson," it has his name endorsed thereon, which endorsement appellant admitted to be genuine. All the other checks introduced in evidence, issued to various people, are shown to have been obtained in the same way, and bear the genuine endorsement of appellant. The evidence shows where he used and cashed many of them. The testimony for the State is that the endorsements made on all the checks, the various names of the payees, are in the handwriting of appellant, but whether endorsed by him or not, it is shown he passed many, if not all of them and received the proceeds. Thus a system is shown of presenting accounts for road work against the county, extending over two years or more, for which the evidence would justify a finding that no work had been done on the roads; that in nearly every instance they were issued in the names of persons whom the road superintendent says did not work on the road; that persons by such names could not be found in the county, except in four instances, and in these four instances the men swear they did not receive the checks and did not endorse them, yet they are all endorsed with the name of the person appearing in the face of the check as payee, and Mr. Oglesby says endorsed in the handwriting of appellant, and in addition thereto are endorsed "E. W. Fry," which endorsement appellant admits to be genuine. In our opinion if there ever was a case where other crimes became admissible as tending to show a system of forgery being practiced, this is such a case. Such evidence would enable the jury to pass on the question of whether or not appellant wrote the name of J. M. Watson on the check in this case and passed the same. It would be a circumstance tending to show that he did so. Dugat v. State, 72 Texas Crim. Rep., 39, and cases cited; McGlasson v. State, 40 S. W. Rep., 503; Taylor v. State, 81 S. W. Rep., 933.

Of course, when the State offered this proof, appellant should be, and was, permitted to offer proof that the signature on none of the checks was in his handwriting. The court in his charge limited the purpose for which such checks could be considered by the jury, and instructed them: "You can not consider for any purpose any of such checks, other than the J. M. Watson check, except such (if any) as you may find and believe from the evidence, beyond a reasonable doubt, were altered by the defendant, without lawful authority and with intent to injure and defraud." Therefore, it was unnecessary to give the special charge requested on this issue.

By a bill it is made to appear that after the jury had been considering the case for some forty hours, they came into court and requested that they be discharged—that they did not think they could agree on a verdict. The appellant was not present at this time, and the court in answer to such request stated to the jury: "Gentlemen, all jury trials are attended with considerable expense. This matter has to be decided by a jury. The court can not decide it, and it seems to the court that you are just as capable of deciding it as any other jury.

The court is not keeping you together as a matter of punishment nor to try to extort from you a verdict either way. I don't want any juror to render a verdict that he does not consider fair and honest, or one that is against his conscience, and if a juror should return a verdict that he did not consider fair and honest, or one that was against his conscience, the court would not receive it if he knew it, it might be that by a further deliberation of this case you could arrive at some conclusion one way or the other, and I will ask that you retire and further consider of your verdict." Appellant contends it was error for the court to make any such remarks to the jury in his absence. This might be such a matter as appellant could complain of, as occurring in his absence, prior to the enactment of those provisions of the statute authorizing him to remain on bond until the verdict of the jury is returned, and authorizing the court to receive the verdict in his absence if he intentionally absents himself from the court. A person on trial is supposed to do and should have as much interest in a case as the trial judge, and it is his duty under his bond to remain in attendance on the court while the jury is out considering his case. If he intentionally and deliberately walks out of the courtroom and remains away, he can not and should not expect the court to delay the proceedings to await his pleasure in returning to the courtroom. The above remarks are not of a character that could have been injurious to appellant, but were proper to be made to the jury when they asked to be discharged.

We think there was ample evidence authorizing the court to submit to the jury the count charging appellant with passing a forged instrument. The check was endorsed by him, and paid at the bank, and the bank officials testify it was their custom to require the person to whom they paid a check to endorse his name thereon. Appellant's endorsement was the last appearing on the check, and the court did not err in submitting this count, and refusing the special charges instructing the jury not to consider that count. The verdict was applied to the count charging forgery.

It appears that after appellant was arrested he and some friends went to the courthouse to get possession of the checks on which the indictments were based—the State's contention being that it was an effort to destroy and suppress testimony. On this visit appellant is shown to have been present, and a shooting occurred in which two men were killed, and another injured. No effort was made to show that appellant was guilty of murder on that occasion, but on the other hand it was in evidence that he had been tried and adjudged not guilty of that offense. No details on another trial should be gone into further than to show the visit, the purpose of the visit, and the seriousness of the effort. This much of the testimony was admissible, and the court did not err in so holding. The court properly limited the purpose of the testimony. Mr. Wharton, in section 748, says, the suppression or destruction of pertinent testimony is always a prejudicial circumstance of great weight; for, as no act of a rational being is performed without a motive, it naturally leads to the inference that such evidence if it

were adduced would operate unfavorably to the party in whose power it is. Evidence to suppress testimony is admissible as a circumstance of guilt the same as flight, evading arrest, etc.

The only other question discussed in appellant's brief, and the only one we deem it necessary to discuss, is the one which contends that the jury discussed appellant's failure to testify while considering the case, and this bill, we think, presents error. The only case the State cites as holding that the bill presents no error is Cooper v. State, 72 Texas Crim. Rep., 266, 162 S. W. Rep., 364. We think the Cooper case correctly announces the law, but the facts in this case are wholly different from the facts in that case. In this case one juror, Mr. Dodson, testified: "Q. State to the court whether or not you heard anybody refer to his failure to testify while you were in the jury room? A. Yes, I did. Q. State to the jury what was said. A. Well, they said that they thought that it would be right for him to testify in his own behalf. Q. Do you know who it was that said that? A. There were three or four said it, but I could not get up and point out the men. Q. Could you tell us how many times you heard mention made about his failure to testify in his own behalf? A. Well, every day. Q. About how often would you think that occurred? A. Well, I would not like to say how many times a day, but mighty near every time we would get to arguing it was brought up." Another juror, Mr. Roland, testified: "Q. Mr. Roland, state whether or not upon the trial of this case, you heard anybody refer to the fact that E. W. Fry did not testify and what they said? A. Oh, I do not know what they did say; they said that if he was not guilty, he could have got up and said that he wasn't, etc."

Every juryman who testified says that the fact that appellant did not testify was mentioned. Some say they heard it only once and it was suppressed. Others testify they heard it mentioned four or five times.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, JUDGE.—I agree to the reversal on ground stated and believe there are other grounds for reversal, and may add some reasons. I do not believe either the extraneous alleged offenses or the details thereof should have been admitted. Also that having admitted these matters, appellant was entitled to his witnesses to meet and counteract the force of such admitted alleged offenses.