### E. W. FRY v. THE STATE.

No. 4979.   Decided June 12, 1918.

Rehearing Denied October 22, 1919.

1.—Forgery—Endorsement—Check—Circumstantial Evidence—Sufficiency of the Evidence.

Where, upon trial of forgery of an endorsement of a certain check pay-

able to a fictitious person, the evidence sustained the conviction, although the same was entirely circumstantial, under a proper charge of the court, there was no reversible error.

### 2.—Same—Other Offenses—Collateral Transactions—Handwriting.

Where, upon trial of forgery of an endorsement upon a certain check made payable to a fictitious person, and that defendant knowing that it was fictitious forged said endorsement, the State relying upon circumstantial evidence, there was no error in permitting the State to introduce in evidence a large number of similar checks drawn in favor of several payees and indorsed by defendant and either collected or passed by him, to show guilty knowledge, system and criminal intent; there being evidence that the indorsement of the payee on these checks resembled in certain particulars the handwriting of defendant and that they were spurious and fictitious and forgeries known to the defendant.

### 3.—Same—Rule Stated—Other Offenses—Fictitious Name—Evidence.

Proof that no person bearing the name signed to a check has any right to draw on the party to whom it is directed is prima facie evidence that the name is fictitious; and testimony by a person largely acquainted in the locality where defendant represents the maker of the instrument to live that he knows of no such person sustains a conviction, defendant offering no proof of the existence of such person; and the fact that defendant had received the fruits of a forged instrument, while not itself sufficient, may, when taken in conjunction with other circumstances in evidence, be sufficient to warrant a conviction for forgery.

### 4.—Same—Collateral Transactions—Charge of Court—Limiting Testimony.

The collateral transactions have a limited effect, and the propriety and necessity, on request that the court should advise the jury of this fact, has been well established, and where the court in the instant case in his main charge as well as the requested charges complied with this rule, there was no reversible error.

### 5.—Same—Charge of Court—Limiting Testimony—Words and Phrases.

Where, upon trial of forgery of an endorsement upon a certain check, the court, together with other circumstantial evidence, admitted in evidence a large number of similar checks and endorsements, to prove system, intent and guilty knowledge, and so charged the jury and limited said testimony thereto, a criticism of the court's said charge that the limitation is not accurate because it used the words, "such checks" and became thereby misleading is untenable, when taken in connection with the several requested charges upon this subject.

### 6.—Same—Continuance—Handwriting—Practice on Appeal.

Where, upon trial of forgery, the application for continuance showed a want of diligence, but the defendant contended that there existed an agreement with the State that it would not be necessary to subpœna the absent witness, in view of the fact that he had been supœnaed in another case, but the application disclosed that the testimony of the absent witness was upon the subject of defendant's handwriting and had not been used at several trials involving the same issue, there was no error in overruling the same.

### 7.—Same—Requested Charge—Former Trial—Agreement of Counsel.

Where, upon trial for forgery, the State introduced testimony of a certain witness on a former trial by agreement of the parties, that one of the col-

lateral checks was negotiated by defendant and that this took place in a saloon, where defendant endorsed the check and received the money, there was no error in the court's refusal to inform the jury that the fact that the transaction occurred in a saloon should not be taken as evidence of guilt, there being nothing in the record to indicate that the jury were informed of the result of the former trial.

### 8.—Same—Fraudulent Intent—System—Other Offenses—Rule Stated.

It is necessary to a conviction in every contested forgery case, that a fraudulent intent on the part of the accused be shown, and when lack of such intent, or want of identity or system is an issue in the case, or when such proof tends to connect the accused with the offense, or disproves the defensive theory, or is part of the res gestæ, evidence of similar transactions on the part of the accused is admissible. Following Hennessey v. State, 23 Texas Crim. App., 340, and other cases.

### 9.—Same—Evidence—Other Transactions—Contemporaneous Acts—Rule Stated.

The State may show in such cases any number of similar transactions, although they cover a period of time and are not coincident with the transaction involved in the particular case on trial, and are not contemporaeous with the alleged forged paper.

### 10.—Same—Comparison of Handwriting—Evidence—Other Transactions.

Upon trial of forgery of an endorsement of a certain check made payable to a fictitious person, there was no error to admit testimony by the State of a large number of checks, warrants, etc., similar to the one upon which the prosecution was based and similar in endorsement in defendant's handwriting, by a comparison of the handwriting of the proved signature of defendant, and that claimed to have been forged. Following Ferguson v. State, 61 Texas Crim. Rep., 152, and other cases, this was especially admissible in view of the fact that the defendant introduced the minutes of the commissioners' court to show the allowance of the alleged forged check, etc., to be genuine.

### 11.—Same—Charge of Court—Other Offenses.

If there were any checks introduced in evidence about which some of the witnesses were in doubt as to whether they were forgeries, the court's charge fully safeguarded the rights of the defendant to the effect that they could not consider such evidence, etc.

### 12.—Same—Order of Commissioners' Court—Fictitious Person—Collateral Attack.

There is no force in defendant's contention that the account in favor of the alleged fictitious payee had been approved by the commissioners' court and therefore imported verity, and that said order could not be collaterally attacked to show that said payee was a fictitious person; besides there was no objection to the testimony tending to establish the fictitious character of said payee, and besides said order was void on its face.

### 13.—Same—Sufficiency of the Evidence.

Where, upon trial of forgery of an endorsement on a certain check payable to a fictitious person, the conviction was fully supported by the evidence, although circumstantial, under a proper charge of the court, there was no reversible error.

**14.—Same—Motion for Rehearing—Statements in Former Opinion.**

Where, upon motion for rehearing, appellant contended that certain named collateral checks introduced in evidence were not shown to bear the endorsement of appellant, but the record negatived such contention, there was no reversible error. Following Gaut v. State, 49 Texas Crim. Rep., 493.

**15.—Same—Clerical Error—Statement in Original Opinion.**

Where it was pointed out in the motion for rehearing that there was a clerical error in the original opinion, in stating the number of collateral checks introduced in evidence, but this error had no bearing upon the legal questions involved, there is no reversible error.

**16.—Same—Mistake—Bill of Exceptions—Statement in Original Opinion— Transcript.**

Where this court was mistaken in its statement that there was no verified bill of exceptions to the court's charge in limiting the effect of other transactions to system, intent, etc., arising from the faulty preparation of the record, but this had no bearing upon its decision, there is no reversible error; but the clerks are admonished to properly prepare their transcripts.

**17.—Same—Charge of Court—Collateral Transactions—Words and Phrases.**

Where, upon motion for rehearing, the appellant again objected to the words, "such checks" as they occurred in the court's charge as to collateral transactions, but the record on appeal showed that even if this criticism might be plausible if the court's charge stood alone, yet it being supplemented by the requested charges given which fully enlightened the jury upon the subject, there was no reversible error.

**18.—Same—Remarks by Court—Practice on Appeal—Agreement—Reproduction of Testimony.**

Where the bill of exceptions showed that the State's counsel offered in evidence the testimony given upon a former trial by agreement, and did not show any objection to that part of said testimony which showed that defendant collected a collateral check in a certain saloon, but that defendant's counsel made a verbal request that the court should limit said part of the testimony, whereupon the court remarked that he had never limited the same before and believed the jury understood the matter, etc., there was no reversible error.

**19.—Same—Charge of Court—Collateral Transactions—Article 743 C. C. P.**

Where it appeared from the record on appeal from a conviction of forgery, that the jury could not have been misled in regard to the purpose for which certain collateral transactions were introduced in evidence, and a reversal would violate article 743 C. C. P., there was no reversible error.

**20.—Same—Requested Charges—Practice on Appeal.**

Where the requested charges which were refused were either covered by the general charge of the court or were not applicable to the facts of the case, there was no reversible error.

Appeal from the District Court of Young. Tried below before the Hon. W. N. Bonner.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Taylor & Allen* and *Padelford, Turner & Doyle,* for appellant.
—On question of collateral offenses: Moore v. State, 203 S. W. Rep.,
767; Long v. State, 39 Texas Crim. Rep., 537; Denton v. State, 60
S. W. Rep., 670; Hill v. State, 44 Texas Crim. Rep., 603; Hinson v. State, 51 id., 102; McAnally v. State, 73 S. W. Rep., 404.
On question of collateral attack on order of Commissioners' Court:
Clark v. Ecton, 150 S. W. Rep., 1016; Bell v. George, 204 S. W.
Rep., 516; Finley v. Wakefield, 184 S. W. Rep., 755; Jeff Davis
County v. Davis, 192 S. W. Rep., 291; Ex parte Koen, 58 Texas
Crim. Rep., 279, 125 S. W. Rep., 401; Mokey v. State, 199 S. W.
Rep., 482.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was charged by indictment with
forgery and with passing a forged instrument. His conviction was
for forgery.

I. B. Padgett, county treasurer of Young County made a check
on the Graham National Bank, county depository, bearing date of
January 16, 1914, for $244, payable to W. A. Moreland which
check, bearing the endorsements of W. A. Moreland and E. W.
Fry, was passed by appellant, and it is charged that W. A. Moreland
was a fictitious person, that his purported endorsement was a
forgery. To sustain its allegation that Moreland was a fictitious
person, that the endorsement was a forgery and that appellant
knowing it was a forgery fraudulently passed it, the State relied
upon circumstantial evidence.

At the time the transaction occurred appellant was county
judge of Young County. The Commissioners' Court was engaged in
certain road improvements in the conduct of which a number of
persons were employed by the county. These persons collected the
money due them for such work by causing to be presented to the
Commissioners' Court an account upon which, when allowed by the
court, the county clerk issued a warrant upon the treasurer drawn
in favor of the owner of the account and this in turn was taken
up by the treasurer who issued his check for the amount. The
transaction in question purports to have resulted from an item thus
dealt with. Appellant was county judge for six years. During part
of his incumbency the Commissioners' Court met only once in three
months and during that time the custom was that accounts that were
overdue were presented to him and receiving his approval a warrant
was issued by the clerk on the treasurer for a check. Subsequently
the court met once a month and modified the previously existing
system so that they passed upon accounts in session. There was

evidence that the account in favor of Moreland was filed by appellant, bore his approval and that he presented to the treasurer a warrant drawn against it and obtained from the treasurer the check in question. The evidence is direct and definite that when he passed it it bore the purported endorsement of Moreland. There was evidence introduced tending to show that no such person as Moreland, the payee in the check, was entitled to a claim against the county, that no man by that name did work upon the road in question, nor lived in the county or was known to any of the witnesses who testified. There was evidence also that accounts against the county for road work  had never reached an amount as much as that in the Moreland check. There was some evidence of parties who were familiar with appellant's handwriting that he wrote the account which was filed in favor of Moreland and that he wrote the endorsement "W. A. Moreland" on the back of the check.

Supplementing the evidence thus summarized, the State introduced in evidence some sixty checks drawn in favor of various payees, drawn by the treasurer, endorsed by appellant and either collected or passed by him, and in connection therewith introduced evidence tending to show that these checks were based upon accounts which were approved by appellant, some of them before the regulation mentioned as existing after the court determined to meet once a month, and some of them prior to that time. Evidence was also given that these collateral checks and transactions were in favor of persons who could not be identified, who had never performed work on the road and who were not entitled to any claim against the county. There was evidence that the endorsement of the payee on these checks resembled in certain particulars the handwriting of appellant. Five or six of the collateral checks mentioned were issued in favor of persons who did reside in the county, and these persons appeared as witnesses and denied all connection with the checks and with their purported endorsement thereon. There was evidence in connection with many of these checks, that there were several issued for amounts that would have been due in the ordinary course of business to persons who were engaged in road work. It appears also from the record that many persons did work upon the road, some of them transient and some of them local people and that many valid transactions took place through the same method that was pursued with reference to the check in question and thus introduced by the State.  The collateral transactions bore various dates ranging from November, 1910, to October, 1914.

The appellant did not introduce evidence except from his cross-examination of the State's witnesses which was directed to show various facts and circumstances tending to prove that the check in question was or might have been a valid transaction, and in this connection did show that the account upon which it was based

appeared upon the minutes of the Commissioners' Court as an allowed claim January 12, 1914, and that the warrant issued by the county clerk on the treasurer had been attached to the treasurer's report which was approved by the Commissoners' Court. He developed similar facts with reference to many of the other transactions which were proved.

Taking into account the great number of transient persons who worked on the road that had come into and gone out of the county, who might have done so without knowledge of the witnesses who were introduced by the State and drew the attention of the jury to these other matters, it might point to the view that even if the endorsement on the check in question was forged that it was without the knowledge of appellant.

Very earnest objection is made to the admission in evidence of the various collateral transactions. The same subject matter has been before the court in the appeal that was a companion case. See Fry v. State, 78 Texas Crim. Rep., 435, 182 S. W. Rep., 331, and the same case on second appeal, not yet reported. Such of these collateral transactions as were accompained by sufficient evidence that they were forgeries, where appellant's connection with them was established, are believed by the writer to be admissible in evidence as bearing upon the issue of forgery and guilty knowledge. In the companion case recently decided the writer drew attention to various authorities. What is said there is deemed applicable here and the repitition of it is unnecessary. The companion case was reversed on the last appeal upon the ground that many of the collateral transactions were not only not shown to be forgeries but there was no evidence of that fact.

This record presents a different aspect. All the parties in whose favor the checks purported to have been issued, and who could be found in the county or elswhere have been called as witnesses and condemned the transactions as spurious as far as they related to them, and there is evidence deemed sufficient to establish the fact that the other documents were issued to fictitious persons. On this subject we take from the 19 vol. Cyc., p. 1421, the following quotation: ''Proof that no person bearing the name signed to a check has any right to draw on the party to whom it is directed is *prima-facie* evidence that the name is fictitious; and testimony by a person largely acquainted in the locality where defendant represents the maker of the instrument to live that he knows of no such person sustains a conviction, defendant offering no proof of the existence of such person; so where a bill of exchange was addressed to a certain person, living at a designated town, and had been apparently accepted, by him, and a person of the name and place designated testifies that the acceptance is not his, and that he had made personal inquiries and consulted a directory without being able to discover any other person of that

name in the place designated, this is evidence for the jury that the name in the acceptance is fictitious." This text is also quoted by Greenleaf on Ev., vol. sec. 109. The document introduced in evidence bearing the purported forged endorsements, were all shown to have passed through the hands of appellant. From the same volume of Cyc., p. 1422, touching this subject we quote the following: "The fact that defendant had received the fruits of a forged instrument, while not itself sufficient proof that the instrument was forged by defendant, may when taken in conjunction with other circumstances in evidence be sufficient to warrant a conviction of defendant for forgery. Possession of a forged instrument by defendant is strong evidence that he forged it or caused it to be forged." See also p. 1414; Wharton's Crim. Ev., vol. 1. p. 135, sec. 35. The collateral transactions have a limited effect, and the propriety and necessity, on request that the court should advise the jury of this fact, has been well established. On the introduction of the collateral documents after the court had overruled the objection to their admission in evidence counsel for appellant at the time asked the court to place such limitation upon them as the law required. Whereupon State's counsel stated: "The law limits them for the purpose of showing system, identity, intent and motive, and that is the purpose for which we are offering them." Appellant's counsel then requested the court that in addition to the limitation suggested by State's counsel that the jury be instructed that it was absolutely necessary for the State to prove before they could be considered for any purpose, stating: "The law says they have got to prove they are forgeries and that Fry knew they were forgeries." The court then said that he would admit the documents only for the purpose of showing, if the jury considered them worth anything for that purpose, and if they did show system of doing business, motive and intention of the defendant, stating as follows: "I will instruct the jury now and probably bring it to their attention later, and at this time so that you may understand gentlemen, about the document offered in evidence that it is not the document, it is not the alleged forgery in the case we are now trying, of course, and could not be considered by you for any purpose against the defendant, unless you find it to be a forgery, unless you find beyond a reasonable doubt that it was a forgery, and you cannot consider it for any purpose even then, you cannot consider it for any purpose except those that I have just named, and then you cannot convict the defendant on it, but, you must find as a forgery the check in the case which we are now trying, or find it to be a forgery before you can consider these at all." The court in his general charge with reference to these matters gave the following instructions: "The State has introduced in evidence a number of checks, warrants and accounts with their endorsement other than the check mentioned in the indictment and upon which the defendant is being tried in

this case, together with testimony relating thereto, and with reference to these other checks, you are instructed, first, that the said other checks and said testimony were only admitted in evidence for the purpose of showing the intent of defendant and his system of conduct with reference to such checks (if in fact they show such intent and system of conduct) and they cannot be considered by you for any other purpose. Second, you are further instructed that you cannot consider for any purpose any of the checks, warrants or accounts other than the W. A. Moreland check, except such (if any) as you may find and believe from the evidence, beyond a reasonable doubt, were altered or knowingly passed as true by the defendant, without lawful authority and with intent to injure and defraud.''

Appellant's counsel, in argument, criticises the paragraph of the court's charge quoted on the ground that the limitaton is not accurate wherein it uses the language, ''said other checks and said testimony were only admitted in evidence for the purpose of showing the intent of defendant and his system of conduct with reference to such checks,'' the contention being that the use of the words ''such checks'' is inaccurate and misleading, and should have told the jury that they could be considered only to show the intent, system, etc., with reference to the check upon which the prosecution is founded. We find no bill of exceptions raising this question either in the way of an exception to the charge nor special charge refused. The record does contain a paper denominated ''exceptions to the court's charge,'' but there is no verification of it by the trial judge, and nothing to show that it was presented to or considered by him. There are some special charges which appear to have been refused, but such refusal is not brought forward for review by bill of exceptions as the practice requires.

The court in the general charge submitted the issues, including the law of circumstantial evidence, in a manner which is not complained of, and at the request of appellant gave several special charges as follows:

''In this case you cannot convict the defendant of the offense of forgery unless the State has proven by the evidence introduced, beyound a reasonable doubt, that the defendant E. W. Fry wrote the endorsement of the name of W. A. Moreland upon the back of a check, a copy of which is set out in the indictment; and unless you do find and believe from the evidence introduced herein, beyound a reasonable doubt, that the defendant did write the endorsement of the name of W. A. Moreland on the back of said check, you will return a verdict of not guilty of the offense of forgery.''

''You are instructed that you cannot convict the defendant in this case of a forgery of any of the checks introduced in evidence by the State other than the one set out in the indictment, and you

cannot convict the defendant of passing any of the checks introduced in evidence by the State as forgeries other than the Moreland check copied in the indictment.''

If the paragraph of the charge quoted above is subject to the criticism addressed to it, and the point was properly raised by bill of exceptions, we think the special charge quoted, in connection with the verbal charge given at request of appellant and quoted herein, would have made plain to the jury the purpose for which the evidence of collateral transactions was before them.

The application for a continuance was for a witness who was not subpoenaed. That he could have been subpoenaed is not controverted, but appellant addressed the application to the trial court upon the theory that dilgence was unnecessary in view of the fact that the witness had been subpoenaed in another case, and that there existed an agreement with counsel that it would not be necessary to subpoena him in all of the cases pending against appellant. It is manifestly not a subpoena complying with the statute, and was addressed to the sound discretion of the trial judge in the nature of an equitable showing for continuance. The qualification, we think, shows a satisfactory reason for overruling it, and the bill of exceptions discloses the fact that the witness' testimony was upon the subject of the handwriting of the appellant, that he was present at several trials involving the same issue, and his testimony had not been used.

It appears from one of the bills of exception that one of the collateral checks was negotiated by appellant at Fort Worth. The witness who testified to the transaction stated that he was in the saloon business, and that the appellant came into his place of business and endorsed the check and received the money on it. This was one of the checks limited as detailed above, but the bill complains that the court did not comply with appellant's verbal request to place a further limitation upon this testimony, informing the jury that the fact that the transaction occurred in a saloon should not be taken as evidence of guilt. The verbal request contains other matters which we think would have been improper, being upon the weight of the evidence, but we understand appellant's special complaint to be as above stated. The evidence as to the locality in which the transaction occured was not the subject of specific objection, and was a detail incident to the introduction of the evidence which we think did not call for a charge limiting its effect. None in writing was requested, but we do not think it would have been error to refuse such request. This testimony was by agreement reproduced from the testimony of the witness Brown on a former trial. Responding to appellant's verbal request mentioned, the court remarked, in substance, that he had not limited the testimony in this respect before, ''and I believe the jury understands the matter of all the checks about as clearly as I can make it.'' We do not think this

was an unauthorized comment upon the evidence; especially is this true in view of the fact that the agreement to read the testimony of Brown on the former trial does not appear to have been made out of the presence of the jury. The jury must from this have known that there had been a former trial. Nothing in the bill indicates that the argument informed them of the result of the former trial, or gave them knowledge of it greater than that obtained from the agreement to use the testimony given by the witness on such trial. We do not think the bill shows error.

Failing to find error disclosed by the record the judgment of the lower court is affirmed.

*Affirmed.*

ON REHEARING.

October 22, 1919.

LATTIMORE, JUDGE.—Appellant's motion for rehearing is before us, accompained by printed and written arguments of unsual cogency and length, which it would be a pleasure to print and review.

Without stating the numerous grounds urged against the former opinion of this Court, we will refer to what seem to us to be the main contentions set forth. It is necessary to a conviction in every contested forgery case, that a fraudulent intent on the part of the accused be shown by the State, and when lack of such intent, or want of identity or system is an issue in the case, or when such proof tends to connect the accused with the offense for which he is on trial or when it tends to disprove the defensive theory, or is part of the *res gestae,* evidence of similar transactions on the part of such accused, if such be obtainable, is permitted, and, as said by this Court in the Hennessy case, 23 Texas Crim. Appeals, 340, "The question is one of induction, and the larger the number of consistent facts, the more complete the induction is." So that, in such case, if the State choose to do so and had the power, it might show any number of similar transactions. Nor is it a valid objection thereto that such transactions cover a period of time and are not coincident with the transaction involved in the particular case on trial. Referring again to the Hennessy case, *supra,* and to the objections urged to the introduction of evidence of similar forgeries to the one on trial, this Court said: "That they are not papers of contemporaneous date with the alleged forged paper, is not a valid objection to them."

The State introduced a large number of checks, warrants, etc., issued by the county clerk and county treasurer of Young County, and payable to various persons, upon the back of all, or substantially all of which checks, appear endorsed the name of the payee there-

in followed by the indorsement of the name of appellant, both which endorsements, according to witnesses for the State, were in appellant's handwriting. The theòry of the State was that the name of the payee endorsed on the back of each of these checks, was a forgery, committed by appellant, and that most of said names were names of fictitious persons. We think abundant evidence was offered to satisfy the jury that the names of said payees were those of fictitious persons. The genuineness of the signature of appellant, as endorsed on each of said checks, was fully established, and under our Code and decisions, a comparison of the handwriting of the proven signature, and that claimed to be forged, might be made by experts or persons who had seen the accused write, or by the jury themselves. Art. 814, Vernon's C. C. P., Haun v. State, 13 Texas Crim. App., 383; Mahon v. State, 46 Texas Crim. App., 234; Ferguson v. State, 61 Texas Crim. App., 152; Hatch v. State, 6 Texas Crim. App., 384; Barber v. State, 64 Texas Crim. App., 96. The appellant introduced the minutes of the Commissioners' Court, showing the allowance of the claim of W. A. Moreland for the amount of the alleged forged check, and by cross-examination further sought to show that the transaction was a genuine one. Such being the case, the State's right to introduce evidence of the other similar transactions, seems clear.—See Branch's Ann. Penal Code, Sec. 1412; Vernon's C. C. P., Sec. 63, p. 624.

If there were any checks introduced in evidence about which some of the witnesses were in doubt as to whether they were forgeries or not, we think the rights of appellant were fully safeguarded by the charge of the Court in telling the jury that they could not consider such evidence for any purpose, unless they were satisfied beyond a reasonable doubt that such instruments were forgeries. They were also told that they could consider such evidence only as showing intent and system (if they believed such evidence showed same.)

We are unable to see any force in appellant's contention that the account in favor of W. A. Moreland against Young County, having been approved by the Commissioners' Court and ordered paid, the check thereafter issued upon such approved account (or upon the warrant first issued in payment therefor) imports verity; or, in other words, that it was established by the judgment of said Commissioners' Court in allowing said account, that W. A. Moreland was a real and not a fictitious person, and that consequently the efforts of the State to thereafter show that Moreland was such a fictitious person, were in the nature of the collateral attack upon said judgment, and should not have been permitted. Such contention, if our serious consideration of same was desired, should have been made in the form of objections to the evidence of such witnesses

tending to establish the fictitious character of said Moreland. However, we observe that the written and filed account in favor of said Moreland and against Young County, for $244, was shown to be in appellant's handwriting, he being then the County Judge of Young County. On the back of said account, as the same appears in evidence, is his official approval or allowance of said claim, of date January 12, 1914. It was in evidence that said claim was presented to, and acted on and allowed by the Commissioners' Court, of which he was a member and *ex-officio* chairman on said date, and the minutes of said court showing the allowance of said claim, were also signed by the appellant officially. Many sufficient reasons might be named why such judgment would be void for any and all purposes. If either party to a proceeding in court be not *in esse* at the time the same is instituted, such proceeding is void. The entire proceeding in such case is one without the jurisdiction of such court. The interest of the appellant in this claim, as maker, supporter, and sole beneficiary thereof, would disqualify him under our laws and Constitution, and make void the entire proceeding; and in any of the above instances, the judgment might be attacked collaterally.

We further observe that neither the State nor the accused were parties to the record entries in this matter, and, therefore, as to them, the judgment is not binding. We would further hold, if necessary, that the approval of the claim in favor of W. A. Moreland would in no sense be a judicial determination that Moreland was a real or living person, and that appellant in no event could seek shelter from the consequences of his act or avoid punishment therefor by such a plea.

There are other questions raised in the ingenious argument of appellant's counsel, but we do not deem it necessary to further discuss them. All conflicts in the evidence have been settled by the verdict of the jury, which does not seem to us to be without sufficient testimony to support same. We have considered all the matters presented, and have concluded that the former opinion of this court is substantially correct, and the motion for rehearing is accordingly overruled.

*Overruled.*

ON REHEARING.

October 22, 1919.

MORROW, JUDGE.—Concurring in the opinion written by my associate overruling the motion for rehearing, I deem it proper to refer to some matters mentioned touching inaccuracies in the original opinion.

Concerning the I. W. or J. W. Harper checks, the contention that there was no evidence showing that they bore the endorsement of appellant is negatived by the record. Bill of exceptions shows that the witness Padgett testified that each of the checks bore the appellant's genuine endorsement. In his testimony he has given a complete list of the checks introduced in evidence, including the Harper checks. Henson, another witness, gave in substance the same testimony, and it affirmatively appears that the appellant was in possession of the Harper checks; and the possession of a forged check, even though not endorsed by appellant, was sufficient to take to the jury the question of fact as to his knowledge of the forgery, which was an issue in case upon which the court submitted to the jury charging passage of a forged instrument. Wharton's Crim. Law, sec. 931; Gaunt v. State, 49 Texas Crim. Rep., 493; Fische v. State, 54 Texas Crim. Rep., 55; Wharton's Criminal Evidence, vol. 1, p. 135, sec. 35; Fry v. State, 203 S. W. Rep., 1096; Fry v. State, 78 Texas Crim. Rep., 435, 182 S. W. Rep., 331.

There is a clerical error in the original opinion in stating the number of checks that were introduced in evidence. The error is of no weight as bearing upon the legal questions involved, for the admissibility of other transactions depends not upon the number but upon their relevancy, and the greater the number the more cogent the evidence. Ruling Case Law, vol. 8, 201-203. People v. Marrin, 43 L. R. A., New Series, 754.

In the original opinion we passed upon the exceptions addressed by the appellant to the court's charge, stating however, that we found no verified bill of exceptions complaining of the charge. In the statement that there was no such verified bill we were mistaken, due to the fact that in the record the exceptions to the court's charge are twice copied in separate places, one without verification and the other with verification. We take occasion to say that in preparing records the clerk should avoid duplication of documents. It unnecessarily increases the cost of appeal, augments the burden of examining the record, and leads to confusion.

The exception to the seventh paragraph of the court's charge, which paragraph is copied in the original opinion, involved the proposition therein mentioned, namely, that the use of the words "such checks" as it occurs in the charge was subject to the construction of the jury that the collateral transactions were before them for the purpose of enabling them to decide the appellant's intent in the commission of the collateral offense. As stated, in substance in the original opinion, if the seventh paragraph of the charge stood alone and embodied the only instructions the jury had upon the subject of the effect which they would be authorized to give to evidence of the collateral transactions, the criticism

might be plausible. The paragraph does not stand alone, however, but supplements other instructions given at the request of appellant. enlightening the jury upon the subject. From appellant's bill of exception No. 2, it appears that when the court ruled that the collateral transactions would be admitted in evidence, the court stated: "I will admit the warrants and documents offered for the purpose of showing, if they do show, if the jury thinks they are worth anything to the jury, they may consider it for the purpose, and only for the purpose, of showing, if it does show, system of doing business, motive and intention of the defendant." Upon which the appellant, through his counsel, stated: "At this time defendant requests the court to instruct the jury they cannot convict the defendant because of the introduction of these documents or any other documents other than the one set out in the indictment." To which the court replied, "Yes sir, I will do that," and immediately gave to the jury the following verbal instructions: "That you may understand, gentlemen, about the document offered in evidence, that it is not the document—it is not the alleged forgery in the case we are now trying, of course, and could not be considered by you for any purpose against the defendant, unless you find it to be forgery, unless you find beyond a reasonable doubt that it was a forgery, and you cannot consider it for any purpose even then except those I have just named, and then you cannot convict the defendant on it, but you must find as a forgery the check in the case we are trying before you can consider those others at all."

After this proceeding, the bill of exceptions shows that the evidence with reference to the various documents and the documents themselves, were introduced in evidence, all of them, as we understand the bill, over appellant's objections, which were named in the bill and with the understanding that they were limited and qualified as above indicated. The court also gave appellant's special charge No. 1, instructing the jury in substance, to return a verdict in appellant's favor on the issue of forgery unless they believed from the evidence beyond a reasonable doubt that appellant wrote the endorsement W. A. Moreland on the back of the check described in the indictment.

Appellant's bill of exceptions No. 3 recites that the State's counsel offered in evidence the testimony of the witness Brown "given upon a former trial, it being agreed by the defendant in person and by his attorney that it should be offered by the State." The bill does not show that any objection was made to the introduction of the testimony, but does show that the appellant's counsel at the time made a verbal request that the court limit its effect. Upon State's counsel remarking, in substance, that it was not necessary to limit the testimony of each witness as they went along, the

court inquired of defendant's counsel what limitation he desired, when defendant's counsel said that the limitation desired was that "they cannot consider the fact that Judge Fry endorsed his name across these checks in a saloon as any evidence that he forged the endorsement on the Moreland check," but it could only be considered for the purpose of showing system, intent and motive. The court remarked, "I have never limited that testimony of Brown before and I believe the jury understands the matter of all the checks about as clearly as I can make it." Exception was reserved to this action and remark of the court. Brown's testimony was to the effect that appellant, in February, 1914, came to his place of business, which was a saloon in Ft. Worth, and endorsed to him a check for $70 payable to C. Hase, signed by I. B. Padgett; that he also cashed a similar check payable to James Hurd for $140. The court in approving the bill states that the "objection occurred after the counsel for the State and defendant and the court had agreed before the jury that defendant's objections to all the checks other than the Moreland check, would be considered as made at the time of their introduction, and after the court had orally limited the effect of said testimony as shown in defendant's bill of exceptions No. 2 . . .; and said testimony was also limited in the court's charge to the jury; and therefore, the two checks identified by the witness Brown were limited in like manner as all of the other checks."

It appears from bill of exceptions No. 2 hereinbefore discussed that the two checks identified by Brown were included in the list of checks which that bill shows were introduced and qualified as therein stated, in all respects mentioned in bill No. 3, except that part which suggested a special qualification covering the fact that the transaction occurred in a saloon. We therefore infer that that phase of the matter is subject of bill No. 3. The court having, as shown by bill No. 2, and by the accepted qualification of bill No. 3, limited the effect of the checks identified by Brown, we do not think there was harmful error in refusing to make special comment on the fact that Brown was in his saloon when he cashed the check for appellant.

Appellant's special charge No. 4 was also given as follows: "You are instructed that you cannot convict the defendant in this case of a forgery of any of the checks introduced in evidence by the State other than the one set out in the indictment and you cannot convict the defendant of passing any of the checks introduced in evidence by the State as forgeries other than the Moreland check copied in the indictment."

We think, considering the charge in connection with the verbal and written charges given, the jury could not have been misled in regard to the purpose for which, under the rulings of the court,

they were authorized to use the evidence of collateral transactions, but to reverse on this contention, we think, would be violative of Article 743, C. C. P., wherein it is declared that the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the accused, or unless it appears that he has not had a fair and impartial trial.

Such special charges as were refused, we think, were properly refused. One of them related to a matter fully covered by the court's charge, and the other touched a subject, in our opinion, not applicable to the case.

The motion is overruled.

*Overruled.*