## QUE R. MILLER V. THE STATE.

No. 15035.   Delivered October 19, 1932.
Reported in 53 S. W. (2d) 790.

The opinion states the case.

*Storey & Storey,* of Vernon, *A. B. Martin,* of Plainview, *Jesse Owens,* of Vernon, and *Vance Swaim,* of Crowell, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is misapplication of public funds; the punishment, confinement in the penitentiary for four years.

Appellant, who was tax collector of Foard county, was indicted under article 95, P. C., in five counts.   Two of the counts were submitted to the jury in the court's charge, namely, a count charging misapplication of public funds, and another charging the secreting of public funds belonging to Foard county with intent to misapply such funds.   The facts, so far as they illustrate the law points discussed, are, briefly, as follows:

The state's case in the main was made by an auditor, whose testimony was to the effect that there was a difference of approximately $16,000 (the amount charged in the indictment to have been misapplied), and the amount transmitted and paid over to Foard county, the alleged owner of the money. In other words, taking the total of tax receipts shown in appellant's report to the county, of February 5, 1931, and subtracting therefrom the amount of his check to the county treasurer of Foard county, there existed a difference of approximately $16,000, which is the amount named in the indictment. Appellant's testimony was to the effect that during the month of January, 1931, the county was in need of funds and requested him to make a report; that he was very busy and hastily prepared his report; that the report upon which the state relied in the most part for a conviction included all checks given to him for taxes during the month of January, 1931, and part of December, 1930; that about 95 per cent of the taxes were paid by checks, and only about five per cent in cash; that the bank would take these checks only for collection, and would credit them to his account when the checks were collected; that many of these checks, perhaps more than $20,000, remained uncollected at the time the report of February 5th was made; that of this amount it was his opinion about $10,000 subsequently turned out to be checks which he was unable to collect; that he believed that under the law he had several months to make a final accounting, as that had been the custom long followed by tax collectors; that he thought that at the time he made his final accounting the uncollected checks would be charged back and he would be credited with them on his final account; that at that time he intended to fully settle and pay any balance owed by him. The testimony on the part of the state showed that a tax payer named Wishon appeared and paid his taxes, partly with a check, and in part by cancelling a note for $2,255 appellant owed him. This sum was never paid by Mr. Wishon, but appellant issued him a tax receipt showing his taxes to have been paid in full. This amount was included in the aggregate of the amount charged in the indictment to have been misapplied by appellant, and was brought forward in the report of the auditor. Appellant's testimony was to the effect that he did not misapply any money, and that if he had been credited with the uncollected checks and other items to which he was entitled, the aggregate of such items would have amounted to more than the amount with which he was charged with misapplying. Appellant, in part, testified as follows: "If I were accorded those credits and debits, as I

contend I am entitled to, it would make several thousand dollars difference in the balance. That difference, coupled with the amount of money that I have received, as I testified, on these late checks, would certainly amount to more than $16,421.24. If it should develop that there was any difference there in favor of the county, will state that I did not, with a fraudulent intent, take, misappropriate or convert any of the funds belonging to Foard County."

The indictment charged a misapplication of $16,461.34 in money which was alleged to be the property of Foard county. The testimony was to the effect that much of the amount going to make up the amount charged in the indictment was represented by checks, some of which were never collected. As shown, appellant's testimony was to the effect that if he had collected these various checks he would have had enough money on hand to have taken care of the items included in the auditor's report. Appellant said: "I had not actually received the money on those alleged checks at the time I made and filed this report on February 5th. That money had not come into my hands, at that time, as tax collector of Foard County."

Appellant objected to the charge of the court for its failure to instruct the jury that checks were not included in the term "money," and that he coud not be convicted for the misapplication of anything but money. The court should have responded to the exception. An allegation of embezzlement or misapplication of money is not supported by proof of the embezzlement or misapplication of a check. Scisson v. State, 121 Texas Crim. Rep., 71, 51 S. W. (2d) 703.

As heretofore stated, it appears from the state's testimony that the witness Wishon paid $2,255 of his taxes by the cancellation of a note appellant owed him. This testimony was introduced by the state to show a misapplication of the funds of Foard county, and was included in the total of the amount charged to have been misapplied, and was included in the auditor's report. Appellant objected to the charge of the court for its failure to instruct the jury affirmatively that no conviction could be had upon this transaction, since no money having been paid thereon, there could have been no misapplication. A requested charge on the subject was submitted to the court, and refused. The charge should have been given. A tax collector has no authority to receive anything but cash in payment of taxes. Scisson v. State, supra, and authorities cited. The judicial precedents are to the effect that private arrangements for payment (differing from the statutory

method) made between the collector and tax payers, and the performance thereof, are at the risk of the parties thereto, and not of the state or county. Scisson v. State, supra.

There was testimony of extraneous offenses, which the court in the charge authorized the jury to consider, if at all, for the purpose of showing intent. We quote one of these charges: "You are further charged in this connection that if there is any testimony before you in this case concerning the manner in which funds belonging to the State of Texas and to the school fund or to the school districts of Foard County were handled by the defendant, or the funds of any other institution, except Foard County, Texas, or any shortage or failure to remit any such funds, said testimony may be considered by you only for the purpose of throwing light, if it does, on the intent of the defendant, if any, in misapplying or converting to his own use, if he did, or secreting money belonging to Foard County, if he did, as alleged in the indictment in this case, if he did so convert, misapply or secrete the same, of which you are to be the sole judge."

In an exception to the charge it was pointed out that the jury should be instructed that they could not consider the alleged extraneous offenses unless appellant's guilt of such offenses was shown by legal evidence beyond a reasonable doubt. This exception was well taken. We quote the language of Judge Lattimore in Lankford v. State, 93 Texas Crim. Rep., 442, 248 S. W., 389, as follows: "It is the settled law in this state that when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof. This has been held to be the correct doctrine as applicable to collateral forgeries, thefts, and other crimes, and we can see no sort of reason for attempting to draw a distinction between the application of said rule in other felony cases and the one now under consideration. If it be true that the jury must be instructed as to a collateral theft or forgery or other collateral crime under our established decisions, that they must believe that guilt of the accused in such collateral crime has been shown beyond a reasonable doubt before same can be considered against him in determining his guilt in the case on trial, then the same rule is applicable here, and the jury should have been told that they could not consider as a guilty circumstance appellant's selling intoxicating liquor in violation of law

on the dates named, unless such guilt was shown by legal evidence beyond a reasonable doubt. For authorities supporting our position see Fry v. State, 78 Texas Crim. Rep., 435, 182 S. W., 331; Fry v. State, 86 Texas Crim. Rep., 73, 215 S. W., 560; Martin v. State, 36 Texas Crim. Rep., 632, 36 S. W., 587, 38 S. W., 194; Ham v. State, 4 Texas App., 645."

Upon another trial appellants' affirmative defense should be submitted to the jury. The fact that the affirmative defense was not adequately submitted was pointed out in exceptions to the court's charge.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.